[No. 727-2.   Division Two.   December 8, 1972.]

THE STATE OF WASHINGTON, *Respondent,* v. LAWRENCE MADRY, *Appellant.*

*Perry J. Robinson,* for appellant.

*Lincoln E. Shropshire, Prosecuting Attorney,* and *Adam Moore, Deputy,* for respondent.

ARMSTRONG, J.—Defendant, Lawrence Madry, appeals from a judgment and sentence based upon a jury verdict finding him guilty of assault in the first degree. He was sentenced to confinement in a penitentiary for a maximum term of 20 years.

There is a single determinative issue presented. Defendant contends that as a result of the trial court's investigation into the operation of the Montana Hotel in Yakima, Washington, which was leased and managed by defendant, the trial court was biased and prejudiced against defendant and defendant was deprived of a fair trial. In conjunction with this issue defendant asserts that due process requires not only that there be an absence of actual bias but that "justice must satisfy the appearance of justice." We agree.

We need not detail the facts to reach the single issue we are considering. Defendant maintains that one John Lowell stole $50 from him. He pointed a gun at Lowell and demanded the return of his money. Defendant claims that Lowell rushed him and the gun was accidentally discharged. Lowell testified that defendant shot him in the chest after the scuffle over the gun terminated. There is substantial evidence to support either theory of the shooting.

Defendant is the lessee and manager of the Montana Hotel. The shooting did not take place in the hotel.

Defendant's trial commenced September 16, 1971 and a jury verdict was rendered on September 22, 1971. A motion for a new trial was filed on September 27, 1971. An order denying defendant's motion for a new trial was entered on

October 29, 1971, at which time the court entered its findings of fact and conclusions of law on the hearing held pursuant to CrR 101.20W. On November 5, 1971 defendant's retained trial counsel (who is not the counsel representing defendant on appeal) made an oral motion for a presentence investigation. This was denied and the court entered judgment and sentence that day.

On September 27, 1971, the trial judge and the other superior court judges for Yakima County signed a letter directed to Judge George H. Mullins, of the Yakima County District Court, who is a part owner of the Montana Hotel. The letter referred to a superior court judges' investigation which revealed that about 65 percent of the arrests for solicitation for prostitution have been immediately outside the Montana Hotel or within a short distance from it. The letter stated "There is a strong indication in the evidence that has come before us that much of the solicitation that takes place immediately outside the hotel results in illegal activity within the hotel."

It is necessary to set the letter forth in full to accord a complete understanding of the contentions of defendant. We have done so in the margin.[1]

---

[1]"SUPERIOR COURT of the STATE OF WASHINGTON
for the County of Yakima
Judge's Chambers

Judge Lloyd L. Wiehl                                    Yakima, Washington
Judge Walter A. Stauffacher                                     98901
Judge Carl L. Loy
Judge Blaine Hopp, Jr.
                              September 27, 1971
"Honorable George H. Mullins
Judge of the District Court
Courthouse
Yakima, Washington 98901

"Dear Judge Mullins:

"The four Superior Court judges, together with Judge Ray Munson of the Court of Appeals, met today under the impression that you might be with us to discuss the problem mentioned in Judge Hopp's letter of September 24, 1971.

"We have learned that you are now in the Lower Valley and probably could not attend a luncheon meeting so we are writing this letter to indicate to you the subject matter of our concern.

"A number of cases have come before the various members of the Superior Court bench which contained evidence of prostitution taking

64

Judge Mullins answered the letter, pointing out that he had inherited his interest in the hotel and had endeavored for 18 years to sell it but had not been able to do so because of the deteriorated condition of the old building. He categorically disputed any illegal conduct on his part, and stated that he had cooperated with the police to the fullest extent, "even to the point of prior police department clear-

place in the Montana Hotel in which you own an interest. In addition, a considerable number of people in Yakima have indicated to various members of the bench that the Montana Hotel is publicly regarded as a house of prostitution. You will recall that Judge Hopp advised you of this fact during a conversation this past February. Since then, however, this problem has intensified. In the joint judgment of all of the members of the Superior Court bench and of Judge Munson, the situation has reflected very adversely upon the entire judiciary. It has also, in our opinion, created a very difficult and embarrassing position for law enforcement officers in the area.

"*Our investigation* of the matter indicates that about 65% of arrests for solicitation of prostitution have been immediately outside the Montana Hotel or within a short distance thereof. *There is a strong indication in the evidence that has come before us* that much of the solicitation that takes place immediately outside the hotel results in illegal activity within the hotel.

"Aside from the discredit that this situation has now cast upon the local judiciary, we feel it is improper for a public official to knowingly permit illegal activity on his property. We feel that it is imperative, to preserve proper standards of law enforcement, to see that this activity be terminated. We further believe that it is imperative that you, as a member of the judiciary, and as part owner of the property involved, should take all measures possible to see that it is terminated, or to divest yourself of interest in the property affected.

"If you are unable to stop the illegal use of the Montana Hotel we feel that it will be our obligation to recommend such legal action as may be necessary to effectuate this result.

"Your early attention to this situation will be very much appreciated by all of the undersigned.

Very truly yours,
Blaine Hopp, Jr.
Carl L. Loy
Lloyd L. Wiehl
Walter A. Stauffacher
SUPERIOR COURT JUDGES
Ray E. Munson
JUDGE, COURT OF APPEALS"

(Italics ours.)

ance of the present tenant." Judge Mullins' letter further stated, "I have heard during the past six years more prostitution cases than all of you together. In no instance was there an arrest for such activity within the hotel."

Several dates become relevant to our consideration of this case: in February, 1971, one of the superior court judges discussed the reputation of the Montana Hotel with Judge Mullins; the trial commenced September 16, 1971 and a jury verdict was rendered September 22, 1971; the letter signed by the trial judge was written September 27, 1971; an order denying defendant's motion for a new trial was entered October 29, 1971; a presentence investigation was denied and defendant was sentenced November 5, 1971.

At the time of denying the defendant's motions for a presentence investigation and for probation, the following statements were made by the trial court:

THE COURT: Now, I have got to indicate to you, too, Sir, that I don't feel you have been truthful to me in respect to this other matter and I agree you may be truthful in saying you rent only to men, but you are not going to tell this Court, from the testimony of witnesses that I have had in this Court time after time after time that men are not paying the tab at the instigation of the girls for prostitution. The price has recently been upped from $10.00 for the girl to $4.00 for the room. This the Court is aware of. Now, for you to stand here and tell this Court that there is no prostitution going on in that hotel is just absolutely ludicrous.

MR. MADRY: I said I didn't rent to prostitutes.

THE COURT: No, you don't rent to prostitutes, but you know what is going on and there was an attempt to mislead the Court on this particular matter, and the Court is not misled. The Court cannot ignore the fact that 65 per cent of all the prostitution arrests in the last year and a half—now, this isn't the reputation that has been gained before, but the last year and a half 65 per cent of all the arrests for prostitution have been in and around that hotel, right in that immediate area; and I can't ignore the fact that there has been a murder committed there while an act of prostitution was taking

place. This was the Green girl.[2] I can't ignore the fact that we have a grand larceny coming up shortly where it is claimed that money was stolen while there was supposed to be an act of prostitution going on.

Defendant contends that the fact that the trial judge had formed an opinion prior to the trial as to the character, veracity and occupation of the defendant did not become evident until the defendant attempted to seek a presentence investigation, which the trial judge summarily denied on the unsubstantiated belief that the defendant was involved in other criminal activities in the Montana Hotel prior to the incident for which he was charged. Defendant asserts it was only at the time of sentencing that he learned that during the week of the defendant's trial the trial judge was in communication with other superior court judges concerning rumors about the defendant's place of business. By this time it was too late to file an affidavit of prejudice, pursuant to RCW 4.12.050.

The court based its refusal of a presentence investigation and refusal to grant probation on the nature of the crime and the background of the defendant. None of that background had been presented in the course of the trial. If the defendant was lawfully convicted of the crime charged, it would have been unusual for the court to grant probation. We note that the power to grant probation remained in the trial court even though RCW 9.41.025 requires a mandatory sentence where the defendant is convicted of a felony while armed with a firearm. However, the trial court was not bound by the provisions of RCW 9.41.025 because the information did not inform Madry that, if convicted of the crime charged, he was subject to the mandatory sentence. *State v. Frazier*, 81 Wn.2d 628, 503 P.2d 1073 (1972).

We are, therefore, in the position of finding no evidence of bias or prejudice against defendant other than the inferences that can be drawn from a careful analysis of the

---

[2]The trial court's reference to "the Green girl" is fully explained in *State v. Gwendolyn Lewis* (a/k/a Donna Green), 6 Wn. App. 38, 491 P.2d 1062 (1971). Miss Lewis was charged with second-degree murder

letter and the statements that the trial court made on the day of sentencing. It can reasonably be inferred from the court's remarks that an investigation was made by the superior court judges which led the trial court to believe that "in the last year and a half 65 per cent of the arrests for prostitution have been in and around that hotel, right in that immediate area." The letter cosigned by the trial judge stated that one of the judges advised Judge Mullins in February, 1971 that the Montana Hotel was publicly regarded as a house of prostitution. One can conclude only that the superior court judges of Yakima County were conducting an investigation into the activities of the defendant substantially before the trial and during portions of the trial in which the trial court retained discretionary control of the case. The letter was written a month before the motion for a new trial was denied.

The superior court judges' investigation did not follow the format of a "special inquiry judge" procedure such as is provided for in RCW 10.27.050.[3] It had the same practical effect as would such "special inquiry judge" procedure. It could be inferred that the judges in their investigations interviewed people and discussed the matter among themselves as well as with law enforcement officers or other individuals. This investigation and the action taken by the judges was intended to remedy a situation which the superior court judges believed was casting discredit upon the entire local judiciary.

---

and was convicted of manslaughter. The Court of Appeals reversed the conviction and remanded the case for a new trial.

[3]The "special inquiry judge" statutes (sometimes referred to as a "one man grand jury" or "judge grand jury") became effective May 11, 1971. Relevant portions of the Criminal Investigatory Act of 1971 provide:

RCW 10.27.050 . . . In every county a superior court judge as designated by a majority of the judges shall be available to serve as a special inquiry judge to hear evidence concerning criminal activity and corruption. [Laws of 1971, 1st Ex. Sess., ch. 67, § 5, p. 506.]

RCW 10.27.180 . . . The judge serving as a special inquiry judge shall be disqualified from acting as a magistrate or judge in any

■    The motives of the superior court judges in investigating the activities of the Montana Hotel, leased and managed by the defendant, were commendable. Their investigation, however, created in them a direct interest in eliminating the criminal activity they believed to exist. The trial judge necessarily acquired an interest in the case of the defendant himself, because the defendant was the one who conducted the business which was condemned in the letter of September 27th.

Since the investigation had the same practical effect as a "one man grand jury", the case is brought within the rationale of *In re Murchison*, 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955). In that case a state judge sitting as a "one man grand jury" under the authority of a Michigan statute, charged two witnesses with contempt after one witness had given answers which the court regarded as perjured and the other had refused to testify unless represented by counsel. The charges were tried by the same judge in open court. The Supreme Court of Michigan upheld the convictions. The United States Supreme Court reversed on the ground that there was a denial of due process in a procedure which allowed the same man who had interrogated witnesses in a "one man grand jury" capacity to judge them in charges arising out of conduct during the investigation. At 349 U.S. 136, the court stated:

A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold

subsequent court proceeding arising from such inquiry except alleged contempt for neglect or refusal to appear, testify or provide evidence at such inquiry in response to an order, summons or subpoena. [Laws of 1971, 1st Ex. Sess., ch. 67, § 18, p. 512.]

the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio,* 273 U. S. 510, 532 [47 S. Ct. 437, 444, 71 L. Ed. 749]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt* v. *United States,* 348 U. S. 11, 14 [75 S. Ct. 11, 13].[4]

We find this statement equally applicable to the case before us.

This position finds further support in *Diimmel v. Campbell,* 68 Wn.2d 697, 414 P.2d 1022 (1966) where the Supreme Court held that the trial judge did not abuse his discretion in granting a new trial upon discovering that his former law partner had expressed in writing a professional opinion corresponding to the legal conclusion the trial judge had reached in the case. At page 699 the court stated:

> We are in complete agreement with the observation made by appellants that the record does not give the slightest hint that the forthright trial judge gave other than open mind and impartial ear to the cause tried before him. Even so, we are not disposed to hold that the trial court abused its discretion in granting respondents a new trial. While we are of the opinion that the cause was impartially decided, the conclusion cannot be escaped that the very existence of the letter beclouded the entire proceeding. It is incumbent upon members of the judiciary to avoid even a cause for suspicion of irregularity in the discharge of their duties.

Defendant argues that since the trial judge indicated by cosigning the letter that the entire local judiciary was being discredited by permitting the alleged illegal activities conducted by the defendant, an interested judge would be

---

'The holding in *In re Murchison,* 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955) was modified by the ruling in *Nilva v. United States,* 352 U.S. 385, 1 L. Ed. 2d 415, 77 S. Ct. 431 (1957) as to the "one man grand jury" judge hearing contempt cases where the contempt does not involve disrespect or criticism of the judge. We believe the quotation cited from *Murchison* is still a correct statement of the law as to

tempted to vindicate any doubts which he may believe had been cast upon his integrity, by publicly trying and sentencing the very person whom he feels is a party to the scandal which is a reflection upon the entire local judiciary. We do not believe that the respected and able trial judge was so motivated. We fear, however, that the circumstances of the investigation of the defendant's activities as manager of the hotel, coupled with a continuing investigation during the times when the trial judge retained discretionary control over defendant's case could lead a reasonable man to question the fairness and impartiality of the judge. While there was no proof of bias or prejudice, the investigations and activity of the trial judge created the appearance of bias or prejudice. The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice. The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial. Next in importance to rendering a righteous judgment is that it be accomplished in such a manner that it will cause no reasonable questioning of the fairness and impartiality of the judge. A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned. *See* Canon 3C(1)(a) Code of Judicial Conduct of the American Bar Association (1972).

Defendant also excepts to the giving of an instruction defining assault in the first degree and the failure to give an instruction counsel on appeal considers essential to defendant's case. Trial counsel had not excepted to any instruction; nor had he proposed any. We do not meet this issue because appropriate exceptions and proposed instructions will undoubtedly be presented on a retrial of this case.

---

proceedings other than contempt hearings. RCW 10.27.080 was apparently drafted to differentiate between contempt proceedings and other subsequent court proceedings arising from the investigation of the special inquiry judge.

Reversed and remanded for a new trial before a visiting judge.

PETRIE, C.J., and PEARSON, J., concur.