[No. 6690–8–III.   Division Three.   August 28, 1986.]

THE ESTATE OF FERN F. LONNEKER, ET AL, *Plaintiffs*, v. ROBERT F. LONNEKER, ET AL, *Appellants*, BAKER–BOYER NATIONAL BANK, ET AL, *as Guardians, Respondents.*

*Robert F. Lonneker,* pro se.

*Mark P. Kuffel, Shea, Kuffel, Lindsay & Flynn, Kristian E. Hedine,* and *Reese, Baffney, Schrag & Siegel,* for respondents.

McINTURFF, A.C.J.—Robert F. Lonneker appeals, *inter alia,* the summary judgment of his third party complaint for indemnity against his father's estate. We reverse.

In 1964, Robert's grandmother, Fern Lonneker, died. Her will named her son, Neal, executor of her estate. Under the will, Neal was the heir to all of Fern's property with the exception of her farmland, which Fern devised to Neal's four sons, subject to a life estate in Neal.

In 1978, Neal gave his son, Robert, a durable general power of attorney. Neal acted on the advice of his doctor, who told him he was afflicted with Alzheimer's disease, which in the future would render him incompetent to handle his affairs. The power of attorney gave Robert authority:

(1) To transfer . . . encumber . . . all my property.
(2) To withdraw funds from and deposit funds in any savings or checking account in my name alone, in joint names, or in my name as trustee, . . .

Further, it provided that Robert "shall have no liability to any person whomsoever, including . . . [Neal's] personal representative, for any action taken in good faith".

By 1982, Neal was incompetent. Baker–Boyer National Bank (bank) was appointed guardian of his estate and was substituted for Neal as personal representative of Fern Lonneker's estate.

In June 1983, the bank, acting in its capacity as successor personal representative of Fern's estate, brought an action

against Robert Lonneker and his wife seeking damages for conversion and breach of fiduciary duty. The complaint alleged Robert had issued two checks for a total of $3,000 from Fern's estate payable to himself for administrative fees. In addition, Robert had issued three checks for a total of $96,000 payable to Lonneker Farms, Inc., the family's farm corporation, as evidenced by promissory notes signed by Robert Lonneker, as president of Lonneker Farms, to Fern's estate. Finally, other checks totaling $8,150 were issued by Robert to his two sisters. According to the bank, all of these disbursements by Robert were without authority.

Robert answered and also filed a third party complaint against the bank[1] in its capacity as guardian of Neal's estate. He asked that, should the court find him liable to Fern's estate, it order Neal's estate to indemnify him pursuant to the terms of the durable general power of attorney. He alleged

(6) That shortly after the execution of the Power of Attorney, Neal A. Lonneker specifically requested Robert F. Lonneker to take over his affairs, including the Estate of Fern F. Lonneker. Pursuant to his intent, he took Robert F. Lonneker to the depository bank, Seattle First National at that time, and there specifically arranged for Robert F. Lonneker to handle the affairs of the Estate of Fern F. Lonneker, and specifically directed that bank to withdraw his name from the signature card.

(7) Further, that Neal A. Lonneker specifically informed Robert F. Lonneker of his past practices of handling the Estate of Fern F. Lonneker, and specifically instructed him to see to the family's personal needs and business needs as he would do and had done.

The bank moved for summary judgment on its action. By letter opinion filed January 11, 1984, the court noted that a dispute of fact existed as to whether Robert was merely carrying out Neal's wishes, but that this dispute was not material. He concluded that summary judgment in favor of

---

[1]Other defendants named in Robert's third party complaint have settled with Robert.

Fern's estate was appropriate, stating:

> Robert had no legal authority to act as personal representative of Fern's estate, not being court appointed. His authority to act as agent of Neal, as personal representative of Fern's estate, ceased upon Neal's incompetency. The durable power of attorney executed by Neal could not validly grant Robert any legal authority to act as personal representative of Fern's estate during Neal's disability.

Robert appealed this decision, but later withdrew his appeal. The record contains a satisfaction of judgment.

The bank then moved for summary judgment dismissing Robert's third party complaint for indemnity against Neal's estate. Robert also moved for summary judgment, and for a (1) stay of execution, (2) change of judge for prejudice, (3) change of venue, (4) continuance, and (5) vacation of the earlier summary judgment. In support of his motion for a change of judge, Robert filed an affidavit in which he attested to the fact he had brought a civil action in the United States District Court for Eastern Washington on May 25, 1984, naming the superior court judge and his wife as defendants. The present record does not disclose whether this action is pending.

With regard to the substance of his action for indemnity, Robert filed several affidavits. His affidavit and that of his attorney asserted that business records recently discovered and attached thereto proved that funds in the account labeled Fern Lonneker estate were the personal funds of Neal Lonneker. Friends and acquaintances of Neal attested to the fact that Neal had told them that funds from the Fern Lonneker estate should be used for personal and business needs of family members and, specifically, that he approved of loans to Lonneker Farms, Inc.

On July 3, 1984, the court granted the bank's motion dismissing Robert's third party complaint for indemnity and denied Robert's motions. Robert's appeal is from these two orders.

The dispositive issue is whether, by means of the durable

general power of attorney, Neal had the power to delegate his authority over Fern's estate account when he was also the sole beneficiary of Fern's liquid assets.[2] We hold that he did.

This case presents unique facts which are not easily analogized to existing decisional law. We hold that the authority successfully relied upon by the bank in superior court is distinguishable. That authority states that an administrator is a trustee of the funds of the decedent's estate, and, as a trustee, the administrator cannot delegate his discretionary powers. *In re Estate of Drinkwater*, 22 Wn. App. 26, 31, 587 P.2d 606 (1978); *Meck v. Behrens*, 141 Wash. 676, 682, 252 P. 91, 50 A.L.R. 207 (1927). But, here, Neal Lonneker was not only the executor of Fern's estate, he was, with regard to the estate account, its sole beneficiary.

■ Under trust law, the coexistence of the legal and equitable interests in property in one person results in a *merger of the interests and termination of the trust.* Restatement (Second) of Trusts § 341, at 176 (1959); G. Bogert, *Trusts* § 30, at 95; § 151, at 542 (5th ed. 1973). For example, in *Greene v. Greene*, 125 N.Y. 506, 26 N.E. 739 (1891), a testator left the remainder of his estate to his three sons, who were made executors and trustees. The court held in 26 N.E. at 740 that the legal and beneficial interests merged in the three sons. *See also In re Estate of Blough*, 474 Pa. 177, 378 A.2d 276, 278 (1977); Annot., *Termination of Trust Where Beneficiary Has Power To Dispose of Property, or Is Given the Entire Beneficial Interest*, 37 A.L.R. 1420 (1925). By analogy, the doctrine of merger applies where the executor is the sole beneficiary under a will. After claims are paid, the executor's legal interest merges with his beneficial interest.

Because Neal enjoyed the dual status of executor and

---

[2]While the four grandsons were willed the farmland, subject to Neal's life estate, the estate account from which the loans were made would have contained only liquid assets of Fern's estate.

beneficiary of Fern's liquid assets, he was free to delegate his authority over the estate account to whomever he chose. No other person's interest was affected thereby. In actuality, it was Neal's money that Robert loaned at Neal's direction to the family's corporation and to Neal's daughters. Thus, the Superior Court erred when it (1) dismissed Robert's third party complaint for indemnity against Neal's estate, and (2) denied Robert's motion for summary judgment on that complaint.

Since we hold Robert is entitled to a summary judgment in his favor in his third party complaint for indemnity, we need not address Robert's argument that the superior court judge should have disqualified himself and that he should have granted Robert's motions for change of venue and a continuance. In the event that further proceedings are necessary in superior court, we note that under Canon 3(C)(1) of the Code of Judicial Conduct: "A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned". *See also Chicago, M., St. P., & P. R.R. v. State Human Rights Comm'n*, 87 Wn.2d 802, 807–08, 557 P.2d 307 (1976); *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972). Ordinarily, the impartiality of a judge toward a party who is suing him might reasonably be questioned. On the other hand, we cannot allow a party to rid himself of a sitting judge simply by naming the judge a defendant in a lawsuit. We have no facts to evaluate Mr. Lonneker's purpose here and, therefore, refer the issue to superior court. Recusal may be in order.

Finally, Robert contends the court erred when it refused to stay execution of the summary judgment in the bank's action on behalf of Fern's estate. As the bank points out, the record contains no bond or other evidence that Robert complied with the requirements of RCW 6.08.020,[3] which

---

[3]RCW 6.08.020 states:

"Before any execution shall be stayed under the provisions of this chapter, the defendant shall give bond to the opposite party, in double the amount of the judgment and costs, with surety to the satisfaction of the clerk, conditioned to pay

provides for stays. Hence, the court did not err.

The judgment of the Superior Court is reversed.[4]

MUNSON and THOMPSON, JJ., concur.

Reconsideration denied October 1, 1986.

Review denied by Supreme Court January 6, 1987.

---

said judgment, interest, costs and increased costs, at the expiration of the period of said stay."

[4]Robert makes two assignments of error which we do not address. First, he challenges the bank's standing to bring an action against him on behalf of Fern's estate. He argues that the bank's appointment as successor personal representative was unlawful. Since we have no record of the appointment proceedings, we cannot review this assignment of error. In addition, the present record does not reflect that Robert raised the issue in Superior Court. Thus, we do not consider it.

Second, Robert contends the court erred in not granting his motion for vacation of the bank's judgment against him. However, the record on appeal does not contain an order denying said motion. Nor is there a record of any hearing at which Robert presented evidence in support of his motion. Again, we have nothing to review.