[No. 13163-7-III.    Division Three.    February 16, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. LONNIE
CARTER, *Appellant*.

*James E. Barrett,* for appellant.

*James Nagle, Prosecuting Attorney,* and *James R. Reierson, Deputy,* for respondent.

THOMPSON, C.J. — Lonnie Carter appeals his conviction on two counts of possession of a controlled substance. He contends the trial court erred in denying his motions for recusal, mistrial and dismissal. We affirm.

## FACTS

Mr. Carter, an inmate at Washington State Penitentiary, was observed in the lunchroom sweating profusely. A correctional officer searched him and asked for his identification. Mr. Carter did not have his inmate identification on him and the officer noticed he slurred his words and was not reacting as he expected him to.

Although Mr. Carter expressed his desire to return to his cell, the officer took him to the medical clinic at the prison and asked that his cell be searched. Mr. Carter was examined by a nurse who found him lethargic and unresponsive. She asked him to submit to a blood test and urinalysis. He refused.

Mr. Carter's cell was searched. A wallet was found in a shoebox in a footlocker underneath his bunk. The footlocker contained mail addressed to Mr. Carter. The wallet con-

tained Mr. Carter's inmate identification card and two small packets. The wallet was seized and the contents of the packets tested. The contents of one packet tested positive for heroin, the other for cocaine.

Mr. Carter was charged with one count of possession of cocaine and one count of possession of heroin. He entered an *Alford*[1] plea and was sentenced on December 14, 1992, to 11 months on each count, to be served concurrently.

Mr. Carter's *Alford* plea was subsequently vacated and a trial set before the same judge who accepted his *Alford* plea and sentenced him. Defense counsel moved for recusal, contending Mr. Carter could not get a fair trial because the judge expressed an opinion as to his guilt during sentencing. The motion was denied.[2]

Defense counsel filed a pretrial motion in limine to exclude any evidence regarding Mr. Carter's being under the influence of a controlled substance on the day his cell was searched. The motion was denied, as was his renewal of the motion during trial.

Defense counsel moved pretrial for a dismissal of charges based on the State's lack of evidence to prove constructive possession. The motion was denied. After the State rested, defense counsel once again moved to dismiss based on the State's failure to produce evidence of constructive possession. The motion was denied.

During trial, a correctional officer called by the State as a chain-of-custody witness testified that he ran a test on the suspected narcotics "based on the fact that I had obtained a presumptive positive on the suspected cocaine, coupled with my previous knowledge of Mr. Carter's history . . .". Mr. Carter moved for mistrial based on the officer's statement. The trial court denied the motion but instructed the jury "to disregard the . . . comment about Mr. Carter's prior history".

---

[1]*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

[2]Mr. Carter petitioned for discretionary review of the order denying recusal. His petition was denied as was his motion to modify that ruling.

The jury found Mr. Carter guilty as charged. He was again sentenced to 11 months on each count, to be served concurrently.

## RECUSAL

Mr. Carter contends the trial judge should have disqualified himself from presiding over his trial after his *Alford* plea was vacated because the judge expressed an opinion on his guilt in connection with the *Alford* plea and sentencing and thereby violated the appearance of fairness doctrine. *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972).[3] He refers us to the following statement:

> I find it hard to believe that these drugs that were found were not yours if they were found in your wallet. Now, maybe somebody put them there without your knowledge, but I really don't buy that, and so I think you are responsible for those drugs. . . .
>
>  . . . .
>  . . . I further think that you need to be held responsible for that. . . .
>  . . . you had to know, and I recall your file is voluminous, you had to know that that was inappropriate behavior that results in a sanction in the institution.

The threshold requirement for application of the appearance of fairness doctrine was reformulated in *State v. Post*, 118 Wn.2d 596, 618, 826 P.2d 172, 837 P.2d 599 (1992). Evidence of a judge's actual or potential bias is now required. *Madry* predates *Post*. As explained in *Post*, at 619 n.9:

> Past decisions of this court have applied the appearance of fairness doctrine when decision-making procedures have created an appearance of unfairness. *E.g., Smith v. Skagit Cy.*, 75 Wn.2d 715, 453 P.2d 832 (1969). Our decision here does not overrule this line of decisions, but reformulates the threshold that must be met before the doctrine will be applied: *evidence of a judge's or decision-maker's actual or potential bias*. This enhanced threshold requirement is more closely related to the evil which the doctrine is designed to prevent.

[3]In *Madry*, a criminal defendant contended he was deprived of a fair trial because the judge who presided over his jury trial was involved in an investigation of his business, before and during the trial, as part of the judge's official functions. *Madry* held the judge should have disqualified himself due to unfavorable personal knowledge he had about the defendant.

(Italics ours.) The appearance of fairness doctrine seeks to prevent "the evil of a biased or potentially interested judge or quasi-judicial decisionmaker". *Post*, at 619.

In *Post*, the appellant argued that the probation officer who prepared his presentencing report was biased against him and that bias should be imputed to the judge who sentenced him. *Post* first determined that the appearance of fairness doctrine applied to the judge, not the probation officer, because the judge was the ultimate decisionmaker. Second, if the appearance of fairness doctrine applied to procedures used to prepare a presentence report, the appellant had failed to show how the sentencing judge was biased. *Post* explained at page 619:

> Without evidence of actual or potential bias, an appearance of fairness claim cannot succeed and is without merit. Because Post's appearance of fairness claim does not contain evidence of actual or potential bias of the judge toward him, Post's appearance of fairness claim is without merit.

Here, the judge's comments during the original sentencing were relevant to his determining whether there were facts, in light of Mr. Carter's *Alford* plea, that would support a finding of guilt. We cannot say those comments evidenced actual or potential bias as required by *Post*. As the judge noted, "it was rather appropriate to get some basis of what had happened . . . some basis of Mr. Carter's alleged involvement". In addition, there is no evidence of any prejudice or bias on the part of the judge during the course of Mr. Carter's jury trial or subsequent sentencing.

## MISTRIAL

A trial court's denial of a motion for mistrial is reviewed under the abuse of discretion standard. *State v. Crane*, 116 Wn.2d 315, 332-33, 804 P.2d 10, *cert. denied*, 501 U.S. 1237 (1991). A denial will be overturned only if there is a substantial likelihood the prejudice affected the jury's verdict. *Crane*, at 332-33. A mistrial should be granted by a trial court only when the defendant has been so prejudiced that nothing short of a new trial will insure the defendant a fair trial. *State v. Mak*, 105 Wn.2d 692, 701, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986).

In denying Mr. Carter's motion for mistrial, the trial court reasoned:

I'm going to deny the motion for mistrial because number one, there is no specific reference to what type of history. . . . The Defendant is an inmate, and I suppose the jury may speculate in any event as to why he is in prison, whether it be for drugs or robbery or assault or murder or whatever . . .

I'm of the opinion that although it was poor judgment on Sergeant Lee's part to make the statement, it was not done intentionally to inject some improper evidence before the jury.

When the jury returned, the court instructed the jurors to disregard the reference to Mr. Carter's history.

Any prejudicial effect of the correctional officer's comment was mitigated under the circumstances of this case. It was a single, isolated response. The trial court immediately struck the objectionable language and told the jury to disregard it. Jurors are presumed to follow instructions to disregard improper evidence. *See Nichols v. Lackie*, 58 Wn. App. 904, 907, 795 P.2d 722 (1990), *review denied*, 116 Wn.2d 1024 (1991). The court's actions sufficiently cured the error and it is unlikely any remaining prejudice affected the jury's verdict. *Crane*, at 332-33. *See also State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988) (reversal is not required unless error is so flagrant and ill intentioned that a curative instruction could not have obviated the resulting prejudice).

## DISMISSAL

Mr. Carter contends the trial court erred in denying his motion for dismissal because no controlled substances were found on his person and he did not have dominion and control over them as required to prove constructive possession. *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969).

Mr. Carter's assignment of error is a challenge to the sufficiency of the evidence. Evidence is sufficient to support a conviction if, when viewed in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980).

The evidence introduced at trial included testimony that (1) the wallet containing the controlled substances was found

in a footlocker beneath Mr. Carter's bunk, (2) the footlocker contained mail addressed to Mr. Carter, (3) the wallet contained other items belonging to Mr. Carter, and (4) just before the wallet containing the controlled substances was found, Mr. Carter was described by a prison nurse as being lethargic and unresponsive.[4] Although Mr. Carter shared his cell with two other inmates, when viewed in a light most favorable to the State, the evidence as to Mr. Carter's constructive possession of the controlled substances was sufficient to create an issue of fact for the jury. *Green.*

We affirm.

SCHULTHEIS, J., concurs.

SWEENEY, J. (dissenting) — "A fair trial in a fair tribunal is a basic requirement of due process." *State v. Madry*, 8 Wn. App. 61, 68, 504 P.2d 1156 (1972) (quoting *In re Murchison*, 349 U.S. 133, 136, 99 L. Ed. 942, 75 S. Ct. 623 (1955)); *State v. Parnell*, 77 Wn.2d 503, 507, 463 P.2d 134 (1969).

> "Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law." *Tumey v. Ohio*, 273 U. S. 510, 532 [71 L. Ed. 749, 47 S. Ct. 437, 444, 50 A.L.R. 1243 (1927)]. Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." *Offutt v. United States*, 348 U. S. 11, 14 [99 L. Ed. 11, 75 S. Ct. 11, 13 (1954)].

*Madry*, at 68-69 (quoting *Murchison*, 349 U.S. at 136).

The court's comments during a hearing on Lonnie Carter's *Alford*[5] plea demonstrate clearly and unequivocally its opinion of Mr. Carter's guilt. For the court to then preside over Mr. Carter's subsequent trial violates the appearance of fair-

---

[4]Evidence of assimilation is circumstantial evidence of prior possession. *State v. Dalton*, 72 Wn. App. 674, 676, 865 P.2d 575 (1994).

[5]*North Carolina v. Alford*, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

ness doctrine in my judgment. I therefore respectfully dissent from my colleagues' opinion.

The majority notes that the court's comments were relevant to Mr. Carter's *Alford* plea. To me, the fact that the court's comments were offered during the course of a hearing on an *Alford* plea is irrelevant to the appearance of fairness issue raised by Mr. Carter. The focus of our inquiry here should be on the appearance of the court's impartiality, not the reasons which might have prompted the court's expression of partiality or the forum in which it was expressed. But even the nature of the proceeding in which the comments were made — a hearing on an *Alford* plea — lends support, I believe, to my conclusion that this matter should be reversed and remanded for a new trial.

On a plea of guilty, the court is only required to satisfy itself "that there is a factual basis for the plea". CrR 4.2(d); *State v. Norval*, 35 Wn. App. 775, 781, 669 P.2d 1264 (1983). CrR 4.2(d) does not require that the trial court be convinced beyond a reasonable doubt that the defendant is in fact guilty. *Norval*, at 782. " 'It should be enough if there is sufficient evidence for a jury to conclude that he is guilty.' " *Norval*, at 782 (quoting *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976) (quoting *United States v. Webb*, 433 F.2d 400, 403 (1st Cir. 1970), *cert. denied*, 401 U.S. 958 (1971))). In fact, an *Alford* plea by its very nature is equivocal; the defendant pleads guilty without admitting guilt. *In re Montoya*, 109 Wn.2d 270, 280, 744 P.2d 340 (1987); *In re Ness*, 70 Wn. App. 817, 822, 855 P.2d 1191 (1993), *review denied*, 123 Wn.2d 1009 (1994); *see also New York Underwriters Ins. Co. v. Doty*, 58 Wn. App. 546, 550, 794 P.2d 521 (1990) (*Alford*-type plea does not allow "full and fair opportunity" to litigate, therefore doctrine of collateral estoppel should not apply to these kinds of pleas).

The court's comments here go further than simply establishing a basis for Mr. Carter's *Alford* plea; they are a definite expression of the court's belief that Mr. Carter is guilty:

I find it hard to believe that these drugs that were found were not yours if they were found in your wallet. Now, maybe some-

body put them there without your knowledge, but I really don't buy that, and so I think you are responsible for those drugs. . . .

. . . .

. . . I further think that you need to be held responsible for that. . . .

. . . [Y]ou had to know, . . ..

The prosecuting attorney apparently agreed with Mr. Carter, commenting in response to Mr. Carter's motion for recusal:

As Mr. Barrett stated, in this case, I think, Mr. Barrett has a point, in that you have stated your beliefs. You are not going to be the trier of facts should this go to trial because you will not ultimately be making the decision, a jury would be, as to his guilt or innocence. However, you will be ruling on motions and objections, things like that. So, I think, in that respect, I think, Mr. Barrett has a good argument.

The State was correct. A trial judge is invested with enormous discretion in the conduct of a jury trial. *State v. DeWeese*, 117 Wn.2d 369, 380, 816 P.2d 1 (1991). His or her discretionary decisions are reversible only for abuse. For me, the potential for bias required by *State v. Post*, 118 Wn.2d 596, 619 n.9, 826 P.2d 172, 837 P.2d 599 (1992) exists when those discretionary decisions are being made by a trial judge who is already convinced of the defendant's guilt and has said so.

Moreover, *Post* does not undermine the basic statement of law which should control this case: "The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial." *Madry*, at 70; *State v. Brenner*, 53 Wn. App. 367, 374, 768 P.2d 509, *review denied*, 112 Wn.2d 1020 (1989).

I would therefore conclude that the appearance of fairness doctrine has been violated and remand for a new trial.

Review denied at 126 Wn.2d 1026 (1995).