# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of<br><br>PATRICIA ANN BELL,<br><br>           Appellant,<br><br>    v.<br><br>CARLO ALEXANDER DILORENZO,<br><br>           Respondent. | No. 55328-7-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, A.C.J. – Patricia Bell and Carlo DiLorenzo ended their marriage in 2016. In 2017, DiLorenzo sought modification of the temporary parenting plan that the parties were subject to while they litigated a final parenting plan and child support obligations. Under the temporary plan, DiLorenzo's visits with his children were supervised by Kate Lee. Bell hired a private investigator, who revealed that Lee had previously been convicted of perjury and other felonies. Bell filed this information with the court, and a local news outlet ran a story about Bell uncovering Lee's prior convictions. Before the parties' trial, Bell moved for a change of venue because she believed that no judge on the Pierce County Superior Court could fairly hear the case. The trial judge denied the motion, and Division Three of this court affirmed the judgment of the trial court on appeal. That trial is not the subject of this appeal, although facts from that earlier case play a role in the current appeal.

In 2019, DiLorenzo filed a petition to modify the final parenting plan. In this petition, DiLorenzo sought to relocate with his children to New York, primary residential placement, sole decision-making, a Guardian ad Litem appointment, and a continuation of an order restraining Bell. After the court found adequate cause for the petition to proceed, Bell filed several motions, including a motion for a new trial judge. The court denied all of Bell's motions, and the case proceeded to trial. Following the trial, in August 2020, the trial court granted DiLorenzo's petition and entered a final order and findings on objection about moving with children, final order and findings on petition to change parenting plan, final parenting plan, child support order, restraining order, and judgment.

Bell appeals, arguing that the trial judge should have recused himself prior to trial because various actions on the part of the trial judge violated the appearance of fairness doctrine, because the judge exhibited actual bias, and because the judge violated the Code of Judicial Conduct (CJC) 2.9 by having ex parte contact with the Washington State Bar Association about Bell's lawyer without notifying the parties. We hold that the trial judge was not required to recuse himself because there was no violation of the appearance of fairness doctrine, the trial judge did not exhibit actual bias, and Bell has not shown a violation of CJC 2.9. Accordingly, we affirm the trial court's November 1, 2019 order denying Bell's motions and the final orders entered by the trial court on August 24, 2020 regarding DiLorenzo's petition to modify the parenting plan. In addition, we grant DiLorenzo's request for attorney fees on appeal.

FACTS

Bell and DiLorenzo were married in New York in December 2014 and had two children together. The family moved to Washington in May 2016, and the parties separated in October of

that year. A New York court retained jurisdiction over property division, but Bell and DiLorenzo litigated their parenting plan and child support issues in Pierce County.

From March to December 2017, while the parties were subject to a temporary parenting plan, DiLorenzo's visits with the children were supervised by Lee, who the parties agreed on as the visitation supervisor. In October 2017, Bell hired a private investigator, and the investigation revealed that Lee was convicted of identity theft, forgery, and perjury. Lee withdrew from the case and filed a declaration with the court to "clear [her] name." Clerk's Papers (CP) at 161. The declaration was later determined by then Presiding Judge Elizabeth Martin to be misleading because it strongly implied that Lee had no criminal history.

In December 2017, the trial court held a hearing on DiLorenzo's motion for revision to modify the temporary parenting plan. DiLorenzo requested unsupervised visits and entry of a restraining order preventing Bell from "keeping him under surveillance." *Id.* at 170. Prior to the confirmation that Lee had, in fact, been convicted of several felonies, Judge Kitty-Ann van Doorninck addressed Bell's investigation of Lee, "a respected professional person in the community for a long time." *Id.* at 178. The judge explained:

> [Y]ou have requested, and I have put in orders multiple times, that Ms. Lee be the supervisor. And to have this kind of declaration in this court file is, frankly, appalling to me, without the courtesy of talking to her about whatever the issue was. And just putting it all in for the public.

*Id.*

In January 2018, the Tacoma *News Tribune* published an article about Bell exposing Lee's criminal history. The article quoted an interview with Judge Martin, who explained that the superior court would likely not approve Lee as a visitation supervisor in future cases due to a concern that Lee is impeachable as a witness. Judge Martin had sent an email to the Pierce County

Superior Court judges and commissioners advising them that Lee should not be approved or recommended as a visitation supervisor, and she noted that Lee may have misled the court about her convictions in her declaration. In the interview, Judge Martin also stated that Lee had been a visitation supervisor for a long time and "[n]o one's ever had any basis to question the quality of her work. We're all just trying the best we can for children. I have no reason to think Ms. Lee was doing anything other than that. It's a really sad situation." *Id.* at 445. The *News Tribune* also included an interview with Judge van Doorninck, who explained that she relied on Lee's declaration and did not believe that the allegations were true.

Prior to the 2018 trial on the permanent parenting plan, Bell moved to change venue, alleging that no judge on the Pierce County Superior Court could fairly conduct the trial. Bell argued that Judge Martin's comments in the article and emails between the judges relating to Lee created an appearance of impropriety. Judge Karena Kirkendoll denied the motion, and the case proceeded to trial in June 2018. Following the trial, Bell appealed and Division Three of this court affirmed the trial court. *Bell v. DiLorenzo*, No. 37359-2-III, slip op. at 1 (Wash. Ct. App. Aug. 18, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/373592_unp.pdf.

In July 2019, DiLorenzo filed a petition to modify the June 2018 parenting plan, seeking to relocate to New York with the children, as well as primary residential placement, sole decision-making, a Guardian ad Litem appointment, and a continuation of the order restraining Bell. A court commissioner entered an order granting adequate cause, and the case was set for trial before Judge Michael Schwartz.

In response, Bell filed many motions. Relevant to this appeal, Bell filed a motion for a new trial judge, seeking to have the case removed from Judge Schwartz. This motion asserted ethical

violations by the judges of the Pierce County Superior Court. Once again, Bell contended that Judge Martin's comments in the *News Tribune* article, particularly that it was a " 'really sad situation,' " raised a question of bias. CP at 148. Specifically regarding Judge Schwartz, the motion argued that he should recuse himself because (1) he was specially assigned to the case by Presiding Judge Martin "due to the unpopularity of litigant Patricia Bell," (2) he participated in a bar complaint against her attorney, James Egan, and (3) he inadvertently referred to Bell as "Ms. Lee" at a hearing. *Id.* at 149.

On October 25, 2019, Judge Schwartz held a hearing on all of Bell's motions, cross-motions for sanctions, and DiLorenzo's motion to continue the trial date. At the hearing, Judge Schwartz stated that he was asked to be on the case after "two or three other judges recused themselves," but he did not know their reasons for doing so. Verbatim Report of Proceedings (VRP) (Oct. 25, 2019) at 19. Judge Schwartz also explained that he believed the bar complaint against Egan was filed by then Presiding Judge Garold Johnson, that he was interviewed by bar counsel regarding the complaint, and that he "said Mr. Egan has not been a problem to me. Okay. It makes no difference whether he is in my court or not in my court." *Id.* at 22. Egan argued that he should have been "provided a copy of that interview" and should have known about Judge Schwartz's communications with the bar association right away. *Id.*

On November 1, 2019, Judge Schwartz denied Bell's motions. Regarding the motion for new trial judge, Judge Schwartz explained that he

> is not influenced by prior judicial officers' decisions to recuse themselves from this matter. Other [j]udges' decisions to recuse themselves is not germane to whether Judge Schwartz can oversee the matter with impartiality or an appearance of impartiality. Judge Schwartz is not a grievant in any bar complaint that may be filed against James Egan. Judge Schwartz was interviewed by the Washington State Bar

> Association and stated that James Egan had not been a problem in his court room. Judge Schwartz's impartiality cannot reasonably be questioned.

CP at 359.

In January 2020, Bell requested a trial continuance, and in that motion she included an email dated September 20, 2018 from Judge Schwartz's judicial assistant to a person named Rodger Leach[1] which stated:

> We have a potential security issue tomorrow:
>
> Patricia Bell v. Carlo Dilorenzo
> 16-3-04479-3
>
> This involves Atty James Egan – let me know if you need additional information.

*Id.* 544. She later included this same email in a motion for Judge Schwartz to recuse himself based on actual bias.

The trial on DiLorenzo's petition to modify was held in July 2020. Judge Schwartz granted DiLorenzo's petition and entered a parenting plan designating DiLorenzo as the primary residential parent in New York with limited visitation for Bell. Judge Schwartz also entered a final order and findings on the petition, a final order and findings on objection about moving with children, a restraining order against Bell, a judgment requiring Egan to pay attorney fees, and a child support order requiring Bell to pay $100 per month to DiLorenzo. These orders were entered on August 24, 2020.

Bell appeals the trial court's final orders entered on August 24, 2020 granting DiLorenzo's petition, including the order and findings on objection about moving with children, final parenting

---

[1] Although Bell asserts in her brief that this person is a deputy sheriff, there is no evidence in the record of who this person is.

plan, final child support order, restraining order, and judgment. Bell also purports to appeal a March 18, 2020 order denying her motion for the trial judge to recuse himself, but the only March 18, 2020 order in the record does not appear to address this motion.

## RECUSAL OF TRIAL JUDGE

Bell argues that Judge Schwartz should have recused himself because his presence on the case violated the appearance of fairness doctrine, Judge Schwartz harbored actual bias, and Judge Schwartz violated CJC 2.9(A) and (B) by answering questions from the Bar Association about Egan pursuant to a bar complaint without promptly notifying the parties. DiLorenzo argues that Bell's claims regarding the appearance of fairness doctrine are barred by collateral estoppel and, alternatively, that Bell has not established a violation of the doctrine, and that there is not sufficient evidence in the record providing context for the "security threat" email or of the substance of the bar complaint. Br. of Resp't at 38. We hold that Bell's claims are without merit.

A. LEGAL PRINCIPLES

The law in Washington has consistently recognized that judges are required to recuse themselves if they are actually biased or even potentially biased. *Tatham v. Rogers*, 170 Wn. App. 76, 93, 283 P.3d 583 (2012). This is because the appearance of bias can be just as harmful to the administration of justice as actual bias. *Id.* at 93. "Washington's appearance of fairness doctrine seeks to prevent the problem of a biased or potentially interested judge." *Id.* at 95. As a result, a judge is required to "disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." CJC 2.11(A). "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that 'a reasonable person knows and understands all the relevant facts.' " *Sherman v. State*, 128 Wn.2d

164, 206, 905 P.2d 355 (1995) (quoting *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988)).

A trial judge is presumed to have acted without bias or prejudice. *Tatham*, 170 Wn. App. at 96. "To overcome this presumption, the party raising the challenge 'must provide specific facts establishing bias,' " such as a personal or pecuniary interest on the part of the judge. *Tacoma S. Hosp., LLC v. Nat'l Gen. Ins. Co.*, 19 Wn. App. 2d 210, 218, 494 P.3d 450 (2021) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004)), *review denied*, 198 Wn.2d 1041 (2022); *Tatham*, 170 Wn. App. at 96. A party need not prove actual bias, as a mere suspicion of partiality may be sufficient to require recusal. *Tacoma S.*, 19 Wn. App. 2d at 218. However, the asserted facts must be more than mere speculation. *Tatham*, 170 Wn. App. at 96.

A judge's impartiality might reasonably be questioned where a judge has a personal bias toward a party or a party's lawyer. CJC 2.11(A)(1). In addition, a judge cannot, without a valid exception, "initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending or impending matter before that judge's court." CJC 2.9(A). If a judge receives an improper ex parte communication "bearing upon the substance of a matter," the judge is required to promptly notify the parties of the communication and allow the parties an opportunity to respond. CJC 2.9(B). A trial judge's failure to recuse himself or herself when the judicial canons require recusal is a violation of the appearance of fairness doctrine. *Tatham*, 170 Wn. App. at 94.

No. 55328-7-II

We review a trial court's decision regarding recusal for an abuse of discretion.[2] *Tacoma S.*, 19 Wn. App. 2d at 218.

B. ANALYSIS

Bell argues that Judge Schwartz should have recused himself based on three main theories: appearance of fairness, actual bias, and improper ex parte communication.

*1. Appearance of Fairness*

It is not clear whether Bell argues that the Pierce County Superior Court, as a whole, violated the appearance of fairness doctrine, whether Judge Martin violated the doctrine, or whether Judge Schwartz violated the doctrine by accepting assignment of this case while the entire Pierce County Superior Court should have been recused. We assume her argument is the latter and hold that this claim is barred by the law of the case doctrine.

a. Legal Principles

The doctrine of collateral estoppel "bars relitigation of an issue in a subsequent proceeding involving the same parties." *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). Collateral estoppel differs from res judicata in that res judicata bars relitigation of the same cause of action, rather than the underlying issues. *Id.* Conversely, under the law of the case doctrine, " 'a question of law decided by the [appellate] court on a former appeal becomes the law of the case, in all its subsequent stages, and will not ordinarily be considered or reversed

_____

[2] Bell argues that the appropriate standard of review is de novo. The case she relies on, *In re Disciplinary Proceeding Against King*, 168 Wn.2d 888, 899, 232 P.3d 1095 (2010), states, "[q]uestions as to whether undisputed facts violate due process or the appearance of fairness doctrine are legal and reviewed de novo." Here, however, Bell is appealing the denial of her motion for a new trial judge, where Judge Schwartz made a decision regarding whether he was required to recuse himself. Therefore, the proper standard of review in this case is abuse of discretion. *Tacoma S.*, 19 Wn. App. 2d at 218.

9

on a second appeal when the facts and the questions of law presented are substantially the same.' " *Lodis v. Corbis Holdings, Inc.*, 192 Wn. App. 30, 54, 366 P.3d 1246 (2015) (alteration in original) (quoting *In re Estate of Siebrasse*, 2006 S.D. 83, ¶ 16, 722 N.W.2d 86, 90).

The three doctrines are often confused with each other. *Id.* Although similar to res judicata or collateral estoppel, the law of the case doctrine differs in application because it "involves the effect of a previous ruling within one action on a similar issue of law raised subsequently within the *same* action." *Id.* The law of the case doctrine relates to " 'the rule that an appellate court will ordinarily not reconsider its own rulings of law on a subsequent appeal.' " *Id.* at 56 (internal quotation marks omitted) (quoting *Arceneaux v. Amstar Corp.*, 2010-2329, p. 14 (La. 7/1/2011), 66 So.3d 438, 448).

b. Analysis

Bell argues that the appearance of fairness doctrine was violated because Judge Schwartz was "defending the local judiciary under circumstances where a party has brought to light a scandal that discredits the judicial branch of government." Br. of Appellant at 36 (boldface omitted). She claims that this case is similar to *State v. Madry*, 8 Wn. App. 61, 504 P.2d 1156 (1972), where the court "recognized that every Superior Court judge in Yakima County had the same appearance of fairness problem and thus none of them could try the case." Br. of Appellant at 44 (emphasis omitted). Bell urges this court to find the same remedy appropriate here.

However, Bell's argument does not account for the prior decision by Division Three of this court. In that case, the court was reviewing Judge Kirkendoll's denial of Bell's motion for change of venue. *Bell*, No. 37359-2-III, slip op. at 13. Bell argued that *no* Pierce County Superior Court judge could fairly hear the case, and the court reviewed "her contention on appeal that she was

complaining of an appearance of bias" based on pretrial publicity created by the Tacoma *News Tribune* article. *Id.* at 13. The court rejected Bell's argument:

> Ms. Bell's argument in the trial court was that because the uncovering of Ms. Lee's criminal background resulted in a directive that judges no longer appoint Ms. Lee to supervise visitation, a situation the presiding judge characterized as "sad," then every Pierce County judge would hold this "sad situation" against Ms. Bell. This makes no sense.

*Id.* at 14. The court held that a reasonable observer knowing all the facts would not infer that "any of the . . . superior court judges would be biased against Ms. Bell." *Id.* As a result, "there was no reason for Judge Kirkendoll to recuse herself and no reason to grant a change of venue." *Id.* at 15.

To the extent that Bell argues in this case that no Pierce County Superior Court judge could fairly try the case, this claim is barred by the law of the case doctrine.[3] Bell argues that the issues are different in each appeal because (1) the underlying motions involved different judges and (2) the prior appeal involved an appearance of bias against Bell, but this appeal involves an appearance of bias against Bell's attorney, Egan. Nevertheless, the question of law presented in the prior appeal was whether there was an appearance of bias for all of the superior court judges, and Bell raises the same question here by arguing that a reasonable person "could 'question the impartiality' of any Pierce County Superior Court judge who had total discretionary control over [her] case." Br. of Appellant at 43. Although the question is presented here as a motion for a new trial judge, rather than a motion for change of venue, the issue she raises in this portion of her brief is identical to the prior appeal. Therefore, to the extent that Bell argues that we should hold that Judge Schwartz

---

[3] The parties' briefing focuses on the doctrine of collateral estoppel. However, as noted above, the law of the case doctrine is applicable in appeals within the same action. *Lodis*, 192 Wn. App. at 54. Because this appeal arose from a petition to modify the parenting plan, within the same case as the prior appeal to Division Three of this court, the law of the case doctrine applies.

should have recused himself because no Pierce County Superior Court could be impartial, we hold that this argument is barred by the law of the case doctrine.

      c. Judge Schwartz's Assignment to the Case

Bell additionally argues that the appearance of bias in this case was "exacerbated" because the presiding judge assigned Judge Schwartz to this case rather than following the court's typical procedure where the Pierce County Superior Court Administrator would assign the judge. Br. of Appellant at 44 (boldface omitted). She contends that this procedure is outlined in the Pierce County Local Rules, and that a departure from this procedure creates the appearance of bias because it suggests that Judge Martin hand-picked Judge Schwartz because he would likely attempt to prevent further bad publicity for the court related to the court's past use of Lee for supervising child visitation.

Even assuming the court departed from its typical procedure, Bell has not shown that this departure violates the appearance of fairness doctrine. At the October 25 hearing, Judge Schwartz informed the parties that he was asked to be on the case after "two or three other judges recused themselves." VRP (Oct. 25, 2019) at 19. In denying Bell's motion for a new trial judge, Judge Schwartz explained that he "is not influenced by prior judicial officers' decisions to recuse themselves from this matter. Other [j]udges' decisions to recuse themselves is not germane to whether Judge Schwartz can oversee the matter with impartiality or an appearance of impartiality." CP at 359. A reasonable person knowing and understanding all the relevant facts in this case would not question Judge Schwartz's partiality on the basis that Judge Martin assigned Judge Schwartz to the case. Bell argues that a different judge may have acted differently, but she points to no

specific fact establishing that Judge Schwartz was biased. Accordingly, we reject Bell's claim that Judge Schwartz's assignment to this case required recusal.

*2. Actual Bias*

Bell argues that the email from Judge Schwartz's judicial assistant indicating a " 'potential security issue' " involving Egan demonstrates actual bias against Bell's attorney, requiring recusal. Br. of Appellant at 45. We disagree.

To overcome the presumption that the trial court acted without bias, a party is required to " 'provide specific facts establishing bias,' " which may include a personal interest on the part of the judge. *Tacoma S.*, 19 Wn. App. 2d at 218 (quoting *Davis*, 152 Wn.2d at 692); *Tatham*, 170 Wn. App. at 96. Although a mere suspicion of partiality may require recusal, more than mere speculation is required. *Tacoma South*, 19 Wn. App. 2d at 218; *Tatham*, 170 Wn. App. at 96.

Here, Bell asks us to speculate about the email in which Judge Schwartz's judicial assistant emailed someone named Rodger Leach about a "potential security issue" that "involve[d]" Egan. CP at 544. Although Bell raised this issue in two filings—a motion for continuance and a motion for recusal—there is no trial court decision that directly addresses the issue.

Therefore, as Bell points out herself, "there is no way of knowing why" the email was sent or whether Judge Schwartz thought it was necessary. Br. of Appellant at 45. Bell speculates that Judge Schwartz was not impartial because of this email, but the existence of this email alone does not raise a suspicion of partiality. We hold that Bell has not established actual bias on the part of Judge Schwartz.

*3. Ex Parte Contact*

Bell argues that Judge Schwartz improperly engaged in ex parte contact when he was contacted about a bar complaint against Egan and did not promptly disclose this contact to the parties. We disagree.

"[T]he content of the communication is key in evaluating whether the judge appears partial for purposes of" the CJC canon prohibiting ex parte communication. *State v. Davis*, 175 Wn.2d 287, 308, 290 P.3d 43 (2012), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). However, the record before us contains almost no information about the content of the communication between Judge Schwartz and the Bar Association. Bell's October 2019 motion for new trial judge alleged that Judge Schwartz violated CJC 2.9 by participating in a "multi-judge bar complaint" against Egan, but she offered no information about the substance of the complaint itself. CP at 149. At the October 25 hearing, Judge Schwartz stated that he was interviewed by bar counsel regarding the complaint and that he "said Mr. Egan has not been a problem to [him]." VRP (Oct. 25, 2019) at 22. Bell cannot establish that this was an improper ex parte communication requiring Judge Schwartz's recusal because there is no indication that the complaint concerned the present case or that Judge Schwartz made comments concerning the pending matter to the investigator.

Bell argues that this case is analogous to *Sherman*. In that case, the plaintiff was enrolled in a chemical dependency treatment program after it was discovered that he was diverting narcotics while a resident in an anesthesiology program. *Sherman*, 128 Wn.2d at 169-70. The trial court's judicial extern contacted the treatment program with questions regarding general procedures for monitoring its participants. *Id.* at 203-04. Our supreme court held that the judge violated the CJC

provision prohibiting ex parte communications. *Id.* at 205. The court explained that, by contacting the treatment program, "the trial judge may have inadvertently obtained information critical to a central issue on remand." *Id.* at 206. Due to that possibility, the court concluded that a reasonable person might question the judge's impartiality. *Id.*

Bell argues that this case in analogous to *Sherman* because Judge Schwartz had ex parte contact "with the agency charged with investigating and disciplining attorneys," much like the judicial extern in *Sherman* contacted "the agency charged with monitoring the conduct of physicians." Br. of Appellant at 48. This analogy is unconvincing. In *Sherman*, the plaintiff's chemical dependency and participation in the treatment program was a "central issue" in the case. *Sherman*, 128 Wn.2d at 206. In other words, it was a problem that the judge had ex parte communication with the treatment program because the communication may have substantively pertained to the case.

Here, Bell has not established that the bar complaint against Egan substantively pertained to this case. The only evidence in the record is that Judge Schwartz said he did not have a problem with Egan. Bell has submitted no evidence that Judge Schwartz received any information that concerned this case; she has only shown that Judge Schwartz discussed Egan's conduct before the court generally. As a result, she has not established that there was an improper ex parte communication or that Judge Schwartz was required to notify the parties of the communication under CJC 2.9(B). Accordingly, we hold that Judge Schwartz was not required to recuse himself based on an improper ex parte communication.

ATTORNEY FEES

DiLorenzo requests attorney fees under RAP 18.9. RAP 18.9(a) provides that the appellate court may order a party who files a frivolous appeal to pay damages to a party who has been harmed. "An appeal is frivolous when the appeal presents no debatable issues on which reasonable minds could differ and is so lacking in merit that there is no possibility of reversal." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012).

Here, the majority of Bell's argument addresses an issue that has already been resolved by Division Three of this court, rendering the claim barred by the law of the case doctrine. Her remaining arguments are without merit because no evidence in the record supports her claims. Accordingly, we hold that DiLorenzo is entitled to attorney fees under RAP 18.9 in an amount to be determined by the court commissioner.

CONCLUSION

We hold that Judge Schwartz was not required to recuse himself based on a violation of the appearance of fairness doctrine, actual bias, or ex parte communication. Accordingly, we affirm the trial court's November 1, 2019 order and final orders entered on August 24, 2020. In addition, we award attorney fees to DiLorenzo in an amount to be determined by the court commissioner.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 55328-7-II

_____
CRUSER, A.C.J.

We concur:

_____
WORSWICK, J.

_____
PRICE, J.

17