[No. 73345-7.   En Banc.]

Argued October 16, 2003.      Decided April 15, 2004.

THE STATE OF WASHINGTON, *Respondent*, v. ALVIN EUGENE WILLIS, *Petitioner*.

*Nancy P. Collins* (of *Washington Appellate Project*) (*Arthur Cohen*, of counsel), for petitioner.

*Norm Maleng*, *Prosecuting Attorney*, and *Deborah A. Dwyer*, *Deputy*, for respondent.

*Jacqueline McMurtrie* on behalf of The Innocence Project Northwest, amicus curiae.

*David Allen* and *Cassandra L. Stamm* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

CHAMBERS, J. — A jury convicted Alvin Eugene Willis of two counts of first degree rape of a child. He was given a life sentence without possibility of parole under the Persistent Offender Accountability Act (POAA), former RCW 9.94A.120(4) (1998). Willis asks us to vacate his conviction on the grounds the trial court improperly excluded expert testimony regarding the use of child witness interview techniques. Additionally he seeks review of his sentence on the grounds statutory rape was not listed as a POAA predicate offense at the time. Division One of the Court of Appeals affirmed both his conviction and sentence. *State v. Willis*, 113 Wn. App. 389, 393, 54 P.3d 184 (2002). After a searching review of the record, we conclude that the exclusion of the expert's testimony was not an abuse of discretion. Therefore, we affirm Willis's conviction. However, because statutory rape was not a POAA predicate offense at the time, we vacate Willis's sentence as a persistent offender and remand for resentencing.

## FACTS

C.B., the complaining witness, was five years old when the alleged abuse took place. 3 Report of Proceedings (3 RP)

at 89.[1] Her parents are divorced and she lives primarily with her mother, Cori Brand. Brand and Willis had been romantically involved for about two years, were in the process of buying a home, and were contemplating marriage when the allegations of abuse surfaced. Willis frequently spent the night at Brand's home, and C.B. often slept in the bed with her mother and Willis.

C.B. also regularly visited her father, Dwain Beck. On one of these visits she began to talk about sex, Willis, her mother, and herself. Beck's friend Kelli Dorn (who had known C.B. for about four years) was also present. She and Beck remember this conversation rather differently. While Beck testified that C.B. first asked him to "tell [Willis] to stop" having sex with her, 3 RP at 94, Dorn testified that C.B. began by pressing two Barbie dolls together while saying "this is my mom and [Willis] having sex." 3 RP at 61-62. Additionally, Dorn testified that it was just before the conversation ended when Beck asked C.B. "do you want daddy to make him stop[?]" 2 RP at 60. Both adults remember C.B. pressing Barbie dolls together, pointing to her vagina to indicate that is where Willis kissed her vagina, saying that her mother was at work or in the kitchen when this happened, and saying that her mother became angry at Willis when this happened.

Two days after C.B. first revealed the abuse, Beck asked C.B.'s mother, Brand, to come over to his house to discuss the matter. He specifically requested that Willis be excluded. After speaking to Beck without C.B. present, Brand went to question her daughter. C.B. indicated that Willis had touched and kissed her vagina and her bottom. C.B. stayed with her father that night and Brand left to confront Willis. Willis's response was equivocal. When Brand asked him if he had licked or kissed C.B.'s vagina, he responded, "I don't think so." 3 RP at 149.

C.B. was interviewed multiple times. She was questioned twice by her father and once by her mother. She was also

---

[1] The Report of Proceedings for April 12, 2000 will be referenced as 1 RP; April 19, 2000 as 2 RP; and May 2, 2000 as 3 RP.

interviewed twice by Nicole Farrell, the child interview specialist for the King County Prosecutor's Office, once by Dr. Wiester of the Harborview Sexual Assault Center, and once jointly by Detective Wilcox of the Federal Way Police Department and her day-care teacher Kristina Gregory.

Farrell, the child interview specialist, combined techniques and procedures from various sources to develop her own child interview protocol. She relied in part on work done by the defense expert Dr. John C. Yuille in developing her protocol. Farrell worked closely with a police detective before and during her interview.

Harborview's Dr. Wiester interviewed C.B. and saw her for a follow-up physical examination. In the interview, C.B. repeated many of the claims she made previously. She also reported new ones. For example, when asked "if she had ever seen [Willis] touch any other kids in a way that is not right," she said "yes." Clerk's Papers (CP) at 86. When questioned further, C.B. said that Willis had touched other children at her house during a party. Dr. Wiester did not follow up on these allegations because "the more questions I asked her about the party at her house and what had happened, the sillier she became." CP at 86. Additionally, when asked if anybody else besides Willis had ever touched her in a way that is not right, she responded: "Well, I touched Duane's penis. [C.B.'s father's first name is Dwain.] I always used to play with his penis, but that was okay because he does not touch me. . . . I used to suck the pee out, only no pee came out." CP at 86. Again, Dr. Wiester did not follow up, but she did recommend that this allegation be explored by an additional interview by Farrell in the prosecutor's office.

Dr. Yuille, the defense's expert, is a professor at the University of British Columbia. He has developed a system for interviewing children called the "Step Way Protocol," that, according to him, is followed in five states and numerous countries. He offered to testify on the potential effect of the interview techniques used on C.B.'s memory. The State moved to exclude Dr. Yuille's testimony under

Evidence Rule (ER) 702, arguing that it would not be helpful to the jury and was precluded by our holding in *State v. Swan*, 114 Wn.2d 613, 656, 790 P.2d 610 (1990).

After nearly a day devoted to the offer of proof and argument, the trial court excluded Dr. Yuille's testimony under ER 702. The trial court found the defense had satisfied only the first two elements of the ER 702 analysis. First, the trial court concluded that Dr. Yuille is an expert in child interview techniques.[2] Second, the trial court found that Dr. Yuille was relying upon scientific studies and data generally accepted within the scientific community. However, the trial court found that Dr. Yuille's testimony would not assist the trier of fact.

Willis was convicted. In his appeal he challenged the exclusion of Dr. Yuille's testimony. *Willis*, 113 Wn. App. at 390. Willis also argued that he was not properly sentenced under the POAA. *State v. Willis*, No. 47118-0-I (unpublished portion), slip op. at 14 (Wash. Ct. App. Sept. 16, 2002). The State argued that under *Swan*, the susceptibility of a child's memory to different interview techniques is within the common knowledge of the jury and therefore expert testimony is always inappropriate.

The Court of Appeals held that *Swan* is not a per se bar to such expert testimony, but that the testimony was properly excluded in this case because Dr. Yuille's testimony would have been unhelpful to the trier of fact. Additionally, the Court of Appeals (in a decision that preceded publication of *State v. Delgado*, 148 Wn.2d 723, 63 P.3d 792 (2003)) upheld Willis's sentence as a persistent offender. *Willis*, No. 47118-0-I, slip op. at 16. Willis sought discretionary review; we granted review limited to the admissibility of Dr. Yuille's testimony and Willis's persistent offender sentence. *State v. Willis*, 149 Wn.2d 1017, 72 P.3d 762 (2003).[3]

---

[2] The State conceded that Dr. Yuille is an expert in child interview techniques.

[3] The Washington Association of Criminal Defense Lawyers and the Innocence Project Northwest filed an amicus curiae brief in support of Willis's claim that the trial court erred by reading *Swan* as a per se bar to expert testimony on child interview techniques.

ANALYSIS

*State v. Swan*

██ We review a trial court's interpretation of case law de novo. *See State v. Campbell*, 125 Wn.2d 797, 800, 888 P.2d 1185 (1995). We begin by emphasizing that our holding in *Swan* does not bar all expert testimony on child interview techniques and suggestibility. In *Swan*, we reviewed and upheld a trial court's decision to exclude particular expert testimony under the particular circumstances. We applied the law to the facts; we did not create a new rule of law.

Further, the predicate for our holding in *Swan* is not present in this case. In *Swan*, the trial court specifically found that the witness's theories were *not* generally accepted by the scientific community. *Swan*, 114 Wn.2d at 656. Here the trial court found Dr. Yuille's theories *were* generally accepted in the scientific community. The State does not challenge this finding, and it is a verity on appeal. *See State v. Rodgers*, 146 Wn.2d 55, 61, 43 P.3d 1 (2002).

We hew to our conclusion in *Swan* that the general principle that younger children are more susceptible to suggestion is "well within the understanding of the jury." *Swan*, 114 Wn.2d at 656. But we also agree with the Court of Appeals that specialized knowledge regarding the effects of specific interview techniques and protocols "is not likely within the common experience of the jury." *Willis*, 113 Wn. App. at 394. For example, that wet pavement is more slippery than dry pavement is within the general knowledge of the jury. That does not prevent the admissibility of expert testimony regarding specific stopping distances under specific friction coefficients created when specific driving surfaces are wet. Similarly, merely because it is a matter of general knowledge that children's memories are changeable does not preclude testimony that specific interview techniques might compromise specific memories.

The admissibility of expert testimony is governed by ER 702 and requires a case by case inquiry. Whether Dr. Yuille's testimony was properly excluded in the present case must be evaluated under ER 702.

## ER 702

We review a trial court's decision to exclude expert testimony for abuse of discretion. *Swan*, 114 Wn.2d at 655 (citing *State v. Mak*, 105 Wn.2d 692, 715, 718 P.2d 407 (1986)). Admissibility depends on whether " '(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact.' " *Id.* (quoting *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984)). In this case, the trial court found that the first two prongs of the ER 702 test were satisfied. We now turn to the third prong.

After listening to an extensive proffer of testimony from Dr. Yuille in the defense's offer of proof, the trial court found Dr. Yuille's testimony would have been limited to suggestibility in general.[4] The trial court excluded Dr. Yuille's testimony. We affirm.

Based upon the near-verbatim report of Farrell's first interview with C.B., Dr. Yuille provided a critique of the interview. He opined that the interview was poorly done for several reasons, including the use of leading questions, the failure to follow up on inconsistencies, and the failure of the child to provide details not supplied by the interviewer. Additionally, Dr. Yuille criticized Farrell for not assessing C.B.'s ability to describe some past event that was not

---

[4]

I guess I keep coming back to it because I keep looking at your argument on suggestibility, because that's all he really is saying, when you get right down to it, that's what he is saying, these questions are leading, you are suggesting an answer by asking the question, you are not allowing her to speak in a narrative form, and so you are not really drawing out of her, you are communicating information to her rather than gathering information. But that's suggestibility . . . .

1 RP at 153.

related to the abuse. He noted the importance of such a step for the purpose of determining how much detail and of what quality of detail the child is capable of independently recollecting.

Although Dr. Yuille's general opinion of the interview was negative, he testified many of the questions asked were proper. For example, he testified nothing in Farrell's questions suggested or led C.B. to disclose Willis's name and allegations against him.

Q. [C.B.] on her own mentions her boyfriend's name is [Willis].

A. Yes.

Q. And [she] says "He always is kissing me. It's kind of private." "[Willis] says not to tell anybody."

Do you have any problem with [C.B.] spontaneously, if you will, making that disclosure?

A. No.

Q. Nothing that [Farrell] has said up to this point would be leading her into that?

A. That is correct.

1 RP at 66. Moreover, he said that the suggestive nature of a leading question was "ameliorate[d]" by C.B.'s response. 1 RP at 72. Additionally, he testified that neither his Step Way Protocol nor any other was appropriate for all preschool children.

> Everybody in this field knows that the biggest problem we have is interviewing preschoolers. And no one yet has developed a technique that we know will work with every preschooler. Now, it works with some, but what's required is that the preschooler has enough communication skills to be able to provide some detail. Some do, but others do not.

1 RP at 60.

Dr. Yuille did not offer to testify that C.B.'s memory or ability to independently recall the events were compromised because of the interviewing techniques utilized.

Not only was the offered testimony highly equivocal, it did nothing to help the trier of fact evaluate C.B.'s most critical testimony: that Willis touched, licked and kissed her vagina. Her statements to her father and his friend, made before any possible tainting interview techniques were introduced, were consistent. C.B. consistently asserted that Willis licked and kissed her private parts in her statements to Dr. Wiester and Farrell. Dr. Yuille did not offer to testify that prior sexual abuse of the victim or improper interview techniques may have led to inaccuracies with respect to this consistent testimony. *E.g.*, 1 RP at 139 (referring to the issue of prior sexual abuse, the trial court ruled Dr. Yuille's testimony "certainly is inadmissible because he has no opinion"). While we recognize that reasonable minds might disagree, that is not the standard. We conclude that Willis has not shown the trial court abused its discretion in excluding Dr. Yuille's testimony.

## PERSISTENT OFFENDER SENTENCING

■ ■ The trial court sentenced Willis as a persistent offender based upon his 1987 conviction for statutory rape. The two-strikes provision of the POAA, in effect at the time Willis was charged, specifically listed predicate offenses. Former RCW 9.94A.030(27)(b)(i)-(ii) (1998). Statutory rape was not included.[5] The trial court engaged in a comparability analysis of the offenses listed and Willis's previous

---

[5] Under the former statute, an offender could be sentenced as a persistent offender with only one previous conviction if the offender:

(b)(i) Ha[d] been convicted of: (A) Rape in the first degree, rape of a child in the first degree, child molestation in the first degree, rape in the second degree, rape of a child in the second degree, or indecent liberties by forcible compulsion; (B) murder in the first degree, murder in the second degree, homicide by abuse, kidnapping in the first degree, kidnapping in the second degree, assault in the first degree, assault in the second degree, assault of a child in the first degree, or burglary in the first degree, with a finding of sexual motivation; . . . and

(ii) Ha[d], before the commission of the offense under (b)(i) of this subsection, been convicted as an offender on at least one occasion, whether in this state or elsewhere, of an offense listed in (b)(i) of this subsection.

Former RCW 9.94A.030(27)(b)(i)-(ii) (1998).

offense. Based upon its analysis, the trial court found Willis to be a persistent offender and sentenced him accordingly.

Willis's sentencing occurred before publication of our decision in *Delgado*, 148 Wn.2d 723. In *Delgado*, we held that the POAA in effect at the time was limited by its statutory terms to the enumerated offenses. *Delgado*, 148 Wn.2d at 731-32.

The facts in *Delgado* and *Willis* are virtually indistinguishable. We adhere to our analysis in *Delgado*. Consequently, because Willis's prior offense was not a predicate offense in the former two-strike provision of the POAA, he must be resentenced. We vacate Willis's sentence and remand for sentencing consistent with this opinion.

## CONCLUSION

We affirm in part and reverse in part. We hold that *Swan* does not prohibit expert testimony on child interview techniques or other evidence otherwise admissible under ER 702. We also hold the trial court did not abuse its discretion excluding Dr. Yuille's testimony under ER 702. Finally, we remand for resentencing.

ALEXANDER, C.J., and JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, OWENS, and FAIRHURST, JJ., concur.