## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45998-1-II |
| Respondent, | |
| v. | |
| LARRY TARRER, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Larry Tarrer appeals his jury convictions of one count of murder in the first degree, one count of attempted murder in the first degree, and one count of manslaughter in the first degree for a 1991 shooting. We hold (1) the trial court did not abuse its discretion when it denied Tarrer's motions for continuance because it had tenable grounds and reasons to deny his motions, (2) Tarrer fails to show evidence of the trial court's actual or potential bias, (3) the trial court did not comment on the evidence because the trial court's attitude is not reasonably inferred from its remarks, (4) the trial court did not abuse its discretion by excluding Tarrer's expert witness because it had tenable grounds and reasons to exclude the evidence under ER 702, (5) the prosecutor's errors do not amount to such pervasive error that they could not have been cured by proper instruction, (6) Tarrer was not prejudiced by his counsel's deficient performance, (7) the trial court correctly instructed the jury on reasonable doubt, (8) there was no cumulative error, and (9) we need not determine whether this matter should be assigned to a different judge on remand because we are not remanding for a new trial. We affirm.

FACTS

I.  OVERVIEW

In January 1991, Claudia McCorvey was six months pregnant.  McCorvey's apartment served as a location for using and dealing crack cocaine.  Bishop (Slim) Johns dealt crack cocaine out of McCorvey's apartment on January 8, 1991.  Johns brought Lavern Simpkins and Larry Tarrer to McCorvey's apartment.  Following an argument about Tarrer's missing cocaine, Tarrer left the apartment and went to a car.  He retrieved a pistol and walked back to McCorvey's apartment.

McCorvey saw Tarrer point the pistol at her.  He shot her twice.  As a result, McCorvey was rendered a paraplegic.  Her baby, Marquise McCorvey, was surgically delivered and lived for less than one hour.  Tarrer also fatally shot Simpkins.

II.  PROCEDURAL HISTORY

In 1991, Tarrer entered an *Alford/Newton*[1] plea to amended charges of murder in the second degree and assault in the first degree.  In 2004, while serving his sentence, Tarrer filed a CrR 7.8 motion to vacate his conviction.  The trial court denied the motion.  Tarrer appealed and we reversed and remanded to the trial court consistent with *In re Pers. Restraint of Andress*, 147 Wn.2d 602, 56 P.3d 981 (2002), and *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 100 P.3d 801 (2004).[2]  The State then withdrew the 1991 amended information.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

[2] *State v. Tarrer*, noted at 130 Wn. App. 1010, 2005 WL 2746678.

In 2009, the State filed an amended information charging Tarrer with premeditated murder in the first degree, attempted murder in the first degree, and manslaughter in the first degree. The State added three sentencing aggravators[3] to the attempted murder in the first degree charge.

The case went to trial in 2009 and resulted in a mistrial. The State retried the case in 2010, resulting in convictions on all counts. We reversed and remanded the case for prosecutorial misconduct.[4] The Honorable Katherine Stolz presided over both trials.

III.     TARRER'S THIRD TRIAL

A.      Motions for Recusal and Continuance

In September 2013, before his third trial, Tarrer moved the trial judge to recuse herself because, he argued, she was not impartial. Tarrer argued that the judge's comment during sentencing following the second trial that "[t]his court is going to do its best to make sure you never get out of prison alive" demonstrated actual bias and violated the appearance of fairness doctrine. Clerk's Papers (CP) at 121. The trial court found that Tarrer failed to establish actual bias "because the court did nothing untoward in making its comments at the last sentencing hearing." CP at 125. The trial court additionally found that "[Tarrer] made this same argument during the appeal from his conviction . . . [and] [t]he court of appeals rejected that request." CP at 125. The judge accordingly denied Tarrer's motion.

On December 12, 2013, Tarrer moved for a continuance of the trial date. Although five weeks earlier Tarrer's counsel represented to the court that he would be ready for trial, he argued

---

[3] They are: "[T]he victim's injuries substantially exceeded the level of bodily harm necessary to satisfy the elements of the offense", "the current offense was a violent offense, and the defendant knew that the victim of the current offense was pregnant," and "the offense involved an invasion of the victim's privacy." Clerk's Papers (CP) at 76.

[4] *State v. Tarrer*, noted at 174 Wn. App. 1029, 2013 WL 1337943.

that his ongoing investigation revealed the identity of another possible shooter. In denying the motion, the trial court noted that defense counsel had been investigating the case for seven months, the issues in Tarrer's case were established, trial was to be held in one month, and Tarrer had speedy trial rights.

On January 10, 2014, three days before trial, Tarrer again moved for a continuance to seek more time to create his witness list and prepare motions in limine. The trial court denied Tarrer's motion and noted that the witness lists were past due.

B.      Pretrial

Tarrer moved in limine to exclude and limit the suggestibility of the eyewitness identification. In support of his motion, Tarrer submitted briefing. On the day of trial, Tarrer requested that the trial court allow Dr. Geoffrey Loftus to testify on the unreliability of eyewitness identification.[5] Tarrer argued that the trial court should consider new case law, which Tarrer included in his brief. The trial court responded:

> Well, you're going to have to get some sort of a synopsis of what you think Dr. Loftus is going to testify to; but again, you know, I took a look through your memorandum I got this morning; and I went back and pulled up the case, you know, Section B, admission of eyewitness identification. . . . I went through all of it. I mean, that ruling was affirmed. That is the state of the law in this case. Whatever prospectively the Supreme Court might rule or the Court of Appeals might rule in the future, that's not where we are right now. Irrespective of whatever New Hampshire, New Jersey, or some other state has done, this state, our Court of Appeals, Division II, has allowed that identification, both by the photomontage and in court, to stand; so you know, I don't really intend—you know, you can argue it again; but you already know how I'm going to rule.

Report of Proceedings (RP) at 67-68.

---

[5] We affirmed the admissibility of eyewitness identifications of Tarrer based on a photo montage in *State v. Tarrer*, 2013 WL 1337943 at *10-11.

Tarrer also moved in limine to limit the State's closing argument based on our opinion reversing Tarrer's convictions because of prosecutorial misconduct. Prior to argument on these motions, the State noted that it might waive closing argument. The trial court responded, "[The State] can basically cut and paste his closing argument to avoid offending the Court of Appeals." RP at 85. The State notified the trial court that it did not intend on giving "any form of the declare-the-truth argument" during closing. RP at 102. The trial court granted Tarrer's motion to preclude the State from making a declare-the-truth argument in closing, but denied his motion to preclude the State from arguing that the jury should render a true verdict. The trial court stated:

> I think there's a distinction between searching for the truth, or the truth is what you decide, and the instruction about render a true verdict. Since we do instruct them on that, I would assume that the appellate court, if they felt that was an inappropriate instruction from the Court, would have taken time to reverse it in their opinion.

RP at 103. The trial court also deferred its ruling on whether the State could use puzzle analogies during closing argument "until or when and if we actually get to some sort of argument regarding a puzzle." RP at 109.

Prior to its opening instructions to the jury, the trial court advised the parties that it was going to emphasize the seriousness of juror misconduct and that it would point out a recent mistrial resulting from juror misconduct in King County. Tarrer responded, "That's fine." RP at 180. During preliminary jury instructions, the trial court told the jury:

> We cannot emphasize strongly enough that you are not to discuss the case or conduct any research . . . by yourself on the subject of this trial. This is very important because it can lead to a mistrial. That has recently happened both in King and Snohomish Counties where . . . the jurors have committed misconduct during deliberation by researching the issues in the case. That means the county has to try the case. In the . . . King County case, it was a rape case which means the victim will have to testify again. In the Snohomish case, it was a child rape case which meant that, ultimately, the Prosecutor's Office dealt with the case because they did not want the five-year-old victim to have to testify again; so it's very important that you not conduct any research.

5

RP at 182-83.

C.     Trial

McCorvey testified at Tarrer's trial.  During redirect examination of McCorvey, the State asked if she recalled Tarrer asking her if drug dealing was dangerous and if drug dealers could have their drugs stolen.  The State then asked, "[Tarrer] thought his drugs were stolen that night; right?"  RP at 688.  Tarrer objected.  Outside the jury's presence, Tarrer argued that the State was trying to characterize him as a drug dealer.

> THE COURT: Well, considering I've heard Mr. Tarrer testify before that he was a drug dealer, I mean—
> [THE STATE]: You can't know that, Judge.
> THE COURT: I know I can't know that.  I mean, not officially.  Personally, yes, I know that.  All right.

RP at 689.  The State made an offer of proof that Johns would testify that Tarrer was a drug dealer and that the State would offer part of Tarrer's prior testimony in which he admitted he was a drug dealer.  The trial court overruled Tarrer's objection.

Tarrer sought to introduce testimony from Dr. Eric Kiesel, a forensic pathologist.  Tarrer made an offer of proof that Dr. Kiesel would testify regarding the size of entrance and exit wounds and what that typically meant.  He would also testify that the medical records he reviewed were consistent with entrance wounds in McCorvey's back and exit wounds in her front.  Dr. Kiesel had not examined McCorvey, and his testimony would be based on his review of her medical records. The trial court excluded Dr. Kiesel's testimony, finding that Dr. Kiesel had not examined McCorvey or her bullet wounds and his generalized opinion about bullet wounds was "not an opinion with any certainty."  RP at 894.  The court also determined that Dr. Kiesel's proposed testimony seemed to be an attempt to circumvent our previous ruling upholding exclusion of expert testimony about other doctors' opinions of McCorvey's wounds.

### D.    Closing Argument

During the State's closing argument, the prosecutor argued that the jury should balance Tarrer's rights with the rights of his accusers.  He stated,

There was an early United States Supreme Court [J]ustice whose name was Benjamin Cardozo who said, [j]ustice, though due to the accused, is due to the accuser, too; We are to keep the balance true; and I tell you that because—while the defendant has every right to a fair trial, that doesn't mean that while you deliberate the evidence in this case, you should not be mindful of Claudia McCorvey, Lavern Simpkins, Marquise McCorvey, and the others who have been affected by this case.  It goes without saying, I think, that 23 years is a very long time to wait for some final justice to come in this case; but it is almost here.

RP at 1271.  The prosecutor also argued that Dr. Loftus's testimony was presented to "distract" and "confuse" the jury, and to make it "hesitant about reaching a verdict."  RP at 1272.  Tarrer objected and argued the State mischaracterized the evidence.  The trial court overruled the objection.

The prosecutor further stated:

A reasonable doubt arising from the lack of evidence is the question of: Do you have enough?  Again, there will always be more. . . .  Do you wish you had DNA evidence . . . shoe prints . . . the gun and the ballistics . . .?  I mean, all of these things are stuff that you could have that you don't have; and I'm going to suggest to you that the law doesn't let you think about those things when you decide if the case was proved beyond a reasonable doubt.  What you look at is: Is the evidence that was actually presented enough?

RP at 1297-98.

### E.    Verdict

The jury found Tarrer guilty of murder in the first degree, attempted murder in the first degree with two aggravating factors, and manslaughter in the first degree. The trial court imposed an exceptional sentence above the standard range of 896 months' confinement.  Tarrer appeals.

ANALYSIS

I.    MOTIONS FOR CONTINUANCE

Tarrer argues that the trial court abused its discretion when it denied his motions for continuance, infringing on his right to counsel because his lawyer did not have time to adequately prepare.  We disagree.

A.    Standards of Review

The trial court has broad discretion to grant or deny a motion for continuance.  *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).  We review a trial court's decision to grant or deny a continuance for an abuse of discretion.  *Downing*, 151 Wn.2d at 272.  We will not reverse the trial court's denial of a motion for continuance unless a defendant shows that the trial court's decision was manifestly unreasonable or rested on untenable grounds or reasons.  *Downing*, 151 Wn.2d at 272.  The trial court weighs many factors when considering a motion for continuance, including "surprise, diligence, redundancy, due process, materiality, and maintenance of orderly procedure."  *Downing*, 151 Wn.2d at 273.

We review claims of a denial of Sixth Amendment rights, including the right to counsel, de novo.  *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010); *State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009).  The constitutional right to assistance of counsel includes a reasonable time for consultation and preparation.[6]  *State v. Hartzog*, 96 Wn.2d 383, 402, 635 P.2d

---

[6] Although Tarrer alleges the trial court's ruling denying a continuance violated his right to counsel, this allegation does not change the standard of review.  As an example, our Supreme Court reviewed a trial court's ruling requiring a defendant attend trial in shackles for an abuse of discretion where the defendant alleged a violation of his right to a fair trial.  *State v. Finch,* 137 Wn.2d 792, 852-53, 975 P.2d 967 (1999); *Hartzog*, 96 Wn.2d at 401; *State v. Dye*, 178 Wn.2d 541, 548, 309 P.3d 1192 (2013).  Not only do we agree with this approach, Tarrer argues that we should review this alleged error under an abuse of discretion standard.

694 (1981). As stated above, a motion for continuance will only be overturned if the trial court abused its discretion. *Downing*, 151 Wn.2d at 272. "In determining whether a trial court has abused its discretion, a reviewing court can find abuse only 'if no reasonable person would have taken the view adopted by the trial court.'" *State v. Barker*, 35 Wn. App. 388, 397, 667 P.2d 108 (1983) (quoting *State v. Henderson*, 26 Wn. App. 187, 190, 611 P.2d 1365 (1980)). "The test is the same even though the constitutional issue of effective assistance of counsel is involved. Moreover, '[t]he decision to deny the defendant a continuance will be disturbed on appeal only upon a showing that the defendant was prejudiced or that the result of the trial would likely have been different had the motion been granted.'" *Barker*, 35 Wn. App. at 396-97 (internal citation omitted) (quoting *State v. Kelly*, 32 Wn. App. 112, 114, 645 P.2d 1146 (1982)).

   B.     No Abuse of Discretion

   Here, the trial court had tenable grounds and reasons to deny both motions for continuance. At a pretrial hearing, Tarrer's counsel assured the trial court that he would be prepared by the time of trial. Approximately five weeks later, defense counsel moved to continue the trial because his ongoing investigation revealed there may be another possible shooter. The State argued that this merely speculative information did not justify further delaying trial. The trial court denied Tarrer's motion. It noted that defense counsel had been investigating the case for seven months, it had been tried twice previously, and trial was scheduled to commence in one month. The trial court stated that the previous seven months provided Tarrer's counsel "more than adequate time to prepare, given the fact that his case has gone to trial twice." RP at 33.

   Thus, the trial court weighed many factors, including both Tarrer's rights and trial maintenance. After so weighing, the trial court denied the motion to continue the trial. The trial court did not abuse its discretion. *See Downing*, 151 Wn.2d at 273.

9

Nor did the trial court abuse its discretion by denying Tarrer's second motion for continuance. Three days before trial, defense counsel again moved to continue the trial, but on a different basis than it previously relied. This time, defense counsel sought more time to create his witness list and prepare motions in limine. The State noted that defense counsel did not state with particularly what issues would require more time, especially in light of the fact that counsel could review the complete testimony of all witnesses from two previous trials. The State also informed the trial court that the witnesses already indicated they did not wish to be interviewed again, and that any such interviews would be redundant of previous interviews. The trial court denied this motion for continuance of the trial date.

The trial court did not abuse its discretion by denying this second motion for continuance because Tarrer presented no compelling reasons to grant the motion. Despite having the benefit of two previous trials to work from, and despite having had eight months to prepare, Tarrer cited his general need for more time. Tarrer failed to show that the trial court's decision to deny this late motion for continuance rested on untenable grounds or reasons.

Because the trial court did not abuse its discretion by denying either of the motions for continuance, we need not go further. Tarrer fails to establish either an abuse of discretion or a violation of his right to counsel. His claim fails.

II.     JUDICIAL BIAS

A.     Standard of Review

Criminal defendants have a due process right to a fair trial by an impartial judge. U.S. CONST. amends. VI, XIV; WASH. CONST. art. I, § 22; *In re Pers. Restraint of Swenson*, 158 Wn. App. 812, 818, 244 P.3d 959 (2010). Impartial means the absence of bias, either actual or apparent. *State v. Moreno*, 147 Wn.2d 500, 507, 58 P.3d 265 (2002). "The law goes farther than requiring

an impartial judge; it also requires that the judge appear to be impartial." *State v. Madry*, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972).

We review constitutional issues de novo. *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010). Claims of judicial bias are reviewed under the appearance of fairness doctrine that states "'a judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.'" *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (1995) (quoting *State v. Ladenburg*, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992)). But the party who argues that a judge has a bias must support the claim with evidence. *Bilal*, 77 Wn. App. at 722. A claim unsupported by such evidence is without merit. *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992). Thus, before we will apply the appearance of fairness doctrine, Tarrer must show such evidence of a judge's actual or potential bias. *Post*, 118 Wn.2d at 619; *State v. Carter*, 77 Wn. App. 8, 11, 888 P.2d 1230 (1995).

A defendant who has reason to believe that a judge should be disqualified because the judge's impartiality might reasonably be questioned "must act promptly to request recusal and 'cannot wait until he has received an adverse ruling and then move for disqualification.'" *Swenson*, 158 Wn. App. at 818 (quoting *State v. Carlson*, 66 Wn. App. 909, 917, 833 P.2d 463 (1992)). A party must use due diligence in discovering possible grounds for recusal and then act upon this information by promptly seeking recusal. *Sherman v. State*, 128 Wn.2d 164, 205 n.15, 905 P.2d 355 (1995). To satisfy the threshold requirement for review, Tarrer must identify constitutional error and show how this alleged error resulted in actual prejudice to his rights that makes it "manifest." *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007).

B.    No Bias[7]

Tarrer first argues that the trial court's remarks, "'Well, considering I've heard Mr. Tarrer testify before that he was a drug dealer'" and "'I know I can't know that. I mean, not officially. Personally, yes, I know that'" show a bias against him. Br. of Appellant at 23 (quoting RP at 689). Tarrer argues that the trial court's remarks demonstrate that it was ready to overrule Tarrer's objection based on evidence from previous trials and that it did not perform its duties impartially.

The trial court's remarks do not provide evidence of actual or potential bias against Tarrer. The State's offer of proof, made immediately after the trial court's remarks, clearly shows what the trial court anticipated: that the State would offer evidence that Tarrer was a drug dealer. As Tarrer concedes, the trial court based its ruling on the State's offer of proof that evidence would establish that Tarrer was a drug dealer; Tarrer does not assign error to the trial court's ruling. Evidence at his third trial did establish that Tarrer was a drug dealer.[8] The trial court's remarks demonstrate its anticipation of the State's offer of proof and do not provide evidence of actual or potential bias against Tarrer.

Tarrer next argues that the trial court showed bias against him by refusing to consider new case law on the issue of eyewitness identification and by making a ruling before considering Tarrer's arguments. Yet, the record demonstrates that, contrary to Tarrer's argument, the trial court considered Tarrer's argument, reviewed applicable case law, and then disagreed with Tarrer on the legal issue. The trial court's decision does not provide evidence of actual or potential bias

---

[7] Prior to trial, Tarrer moved the trial court to recuse itself because it lacked impartiality. The trial court denied Tarrer's motion by written order, and Tarrer does not appeal that denial. The issues he raises on appeal relating to bias and appearance of fairness are different from those he raised below.

[8] McCorvey's earlier testimony also established that she overheard Tarrer discussing losing drugs.

against Tarrer, but rather shows legal determinations against Tarrer's interest.  *See In re Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004).

Tarrer next argues that the trial court showed bias when it commented that, "'[The State] can basically cut and paste his closing argument to avoid offending the Court of Appeals.'"  Br. of Appellant at 25 (quoting RP at 85).  Tarrer argues that this comment makes light of the prosecutorial misconduct during Tarrer's previous trial, "suggesting that the only problem with the prosecutor's previous arguments was that the Court of Appeals found them offensive."  Br. of Appellant at 25.  The comment acknowledges that Tarrer's previous convictions were reversed on the basis of prosecutorial misconduct and seems to express frustration with us, but it does not express favor towards the State.  The trial court's comment is not evidence of bias.

Tarrer further argues that the trial court "reveal[ed] a lack of concern for Tarrer's right to a fair trial" when it denied Tarrer's motions to limit the State's closing argument.  Br. of Appellant at 26.  Tarrer does not assign error to the trial court's rulings, but argues that the rulings demonstrate "an absence of suitable interest in ensuring Tarrer received a fair trial."  Br. of Appellant at 27.  Again, the trial court's decisions do not provide evidence of actual or potential bias against Tarrer, but rather show legal determinations against Tarrer's interest.  *See Davis*, 152 Wn.2d at 692-93.

Because Tarrer fails to show evidence of the trial court's actual or potential bias, we will not apply the appearance of fairness doctrine, and Tarrer's claim fails.  *See Post*, 118 Wn.2d at 619; *Carter*, 77 Wn. App. at 12.

III.     COMMENT ON THE EVIDENCE

A.       Standard of Review

Article IV, section 16 of the Washington Constitution prohibits judges from commenting on evidence. *State v. Elmore*, 139 Wn.2d 250, 275, 985 P.2d 289 (1999). We review constitutional questions de novo. *State v. Cubias*, 155 Wn.2d 549, 552, 120 P.3d 929 (2005). A trial judge is prohibited from making even implied comments on the evidence in order "to prevent the jury from being unduly influenced by the court's opinion regarding the credibility, weight, or sufficiency of the evidence." *State v. Sivins*, 138 Wn. App. 52, 58, 155 P.3d 982 (2007). A trial court's conduct violates the constitution only if its attitude is "'reasonably inferable from the nature or manner of the court's statements.'" *Elmore*, 139 Wn.2d at 276 (quoting *State v. Carothers*, 84 Wn.2d 256, 267, 525 P.2d 731 (1974)); s*ee also State v. Ciskie*, 110 Wn.2d 263, 283, 751 P.2d 1165 (1988) ("An impermissible comment on the evidence is an indication to the jury of the judge's personal attitudes toward the merits of the cause.").

B.       No Comment on the Evidence

Tarrer argues that the trial court's opening instructions to the jury regarding juror misconduct which, if happened, would require victims to testify again was an impermissible comment on the evidence because it "aligned the trial court on the side of victims and against defendants, implying that the jurors should share this view." Br. of Appellant at 29.   The trial court remarked about victims in other cases in the context of admonishing the jury to avoid misconduct. The trial court referred to examples of juror misconduct that resulted in mistrials to emphasize the consequences of juror misconduct and the need to avoid it. The statements were not made in reference to Tarrer or the witnesses in this case. The trial court's attitude towards the

14

merits of Tarrer's case are not reasonably inferred from the nature or the manner of the trial court's statements. The trial court did not comment on the evidence.

IV.    EXPERT WITNESS EXCLUSION

Tarrer argues that the trial court violated his right to present a defense when it excluded his expert witness. The State argues that the trial court did not err, but that even if it erred, the error was harmless. We agree with the State.

A.    Standard of Review

We review the trial court's admission or exclusion of expert testimony for an abuse of discretion.[9] *State v. Willis*, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004). The trial court's discretion is broad, and we reverse the trial court's decision only if it rests on unreasonable or untenable grounds. *State v. Rafay*, 168 Wn. App. 734, 783-84, 285 P.3d 83 (2012).

The federal and state constitutions' guarantee a defendant the right to present a defense. U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, § 22; *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994). But, this constitutional right is not absolute and does not extend to irrelevant or inadmissible evidence. *State v. Aguirre*, 168 Wn.2d 350, 362-63, 229 P.3d 669 (2010); *State v. Maupin*, 128 Wn.2d 918, 925, 913 P.2d 808 (1996). Thus, the right to present a defense is implicated only if the trial court excludes *admissible* evidence.

B.    No Abuse of Discretion

ER 702 governs the admission of expert testimony:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness qualified

---

[9] Tarrer argues the trial court abused its discretion by excluding expert testimony and that this error violated his right to defend himself. "Alleging that a ruling violated the defendant's right to a fair trial does not change the standard of review." *Dye*, 178 Wn.2d at 548.

as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Expert testimony is admissible under ER 702 if "'(1) the witness qualifies as an expert, (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony would be helpful to the trier of fact.'" *State v. Swan*, 114 Wn.2d 613, 655, 790 P.2d 610 (1990) (quoting *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984), *cert. denied*, 498 U.S. 1046 (1991).

Under CrR 4.7(b)(1), the defense must produce the names, addresses, and testimony of witnesses no later than the omnibus hearing. The trial court has sound discretion to manage the discovery process, and in extraordinary cases, it may exclude evidence that was presented in violation of the rules. *State v. Hutchinson*, 135 Wn.2d 863, 882, 959 P.2d 1061 (1998).

Here, the trial court did not abuse its discretion in excluding Tarrer's expert because its decision rested on tenable grounds. The request to admit Dr. Kiesel's testimony first occurred during the third week of trial, it lacked foundation, and it appeared to be a tactic to introduce inadmissible evidence.

First, the trial court noted that Tarrer first sought to introduce Dr. Kiesel's testimony three weeks into trial. The exclusion of evidence that violates court discovery rules is an extraordinary remedy, but the trial court has sound discretion to manage discovery. *Hutchinson*, 135 Wn.2d at 882.

Second, the trial court also excluded Dr. Kiesel's testimony because it appeared to lack foundation. The trial court noted that Dr. Kiesel had not examined McCorvey or her bullet wounds, so his opinion on the wounds lacked foundation. All Dr. Kiesel could testify to were the statements and opinions of the other doctors who did examine McCorvey's wounds. Thus, the trial court concluded that Dr. Kiesel's highly generalized opinion about bullet wounds was "not an

opinion with any certainty that we're going to bring into this courtroom." RP at 894. The trial court properly considered this factor.

Finally, the trial court noted that Dr. Kiesel's proposed testimony appeared to be an attempt to circumvent our previous ruling about the underlying medical records. We upheld the exclusion of expert testimony about *other* doctors' opinions of whether McCorvey's wounds were entrance or exit wounds. *See Tarrer*, 2013 WL 1337943, at *10. Because the trial court relied on tenable grounds and tenable reasons to exclude Dr. Kiesel's testimony, it did not abuse its discretion and therefore, Tarrer's argument that he was denied a fair trial fails.

C.    Harmless Error

Tarrer argues that the exclusion of his expert witness constituted a constitutional violation of his right to present a defense and that the error entitles him to a new trial.[10] Error of constitutional magnitude can be harmless if it is proved to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Error is harmless "if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error." *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002) (citing *State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990)).

Here, even if the trial court erred in excluding Tarrer's expert witness's testimony, we are still convinced beyond a reasonable doubt that any reasonable jury would have reached the same result even with Dr. Kiesel's testimony. His testimony would have merely shown that doctors sometimes misclassify entrance and exit wounds. Thus, Dr. Kiesel may have called into doubt McCorvey's testimony that she was shot in the front. However, this testimony would not have

---

[10] Although the exclusion of testimony is not constitutional, we rely on the higher harmless error standard since Tarrer alleges a constitutional violation of his right to present a defense.

impeached McCorvey's testimony that Tarrer shot her and Simpkins or countered the medical records that indicated that McCorvey was shot in the front. Because of the overwhelming amount of evidence supporting Tarrer's conviction, we are convinced beyond a reasonable doubt that, even with Dr. Kiesel's testimony, any reasonable jury would have convicted Tarrer.

V. PROSECUTORIAL MISCONDUCT

Tarrer argues that he did not receive a fair trial because numerous instances of prosecutorial misconduct during closing argument "eased the State's burden of proof and destroyed the presumption of innocence." Br. of Appellant at 36. Although the prosecutor did err in a few instances, the errors do not require reversal.

A. Standard of Review

A defendant who alleges prosecutorial misconduct must first establish that the prosecutor's conduct was improper. *State v. Emery*, 174 Wn.2d 741, 759, 278 P.3d 653 (2012). Once a defendant meets this threshold, we must determine whether the defendant was prejudiced. *Emery*, 174 Wn.2d at 760. A defendant is prejudiced if there is a substantial likelihood that the misconduct affected the jury's verdict. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). "We review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *State v. Boehning*, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

If the defendant objected at trial, we determine if there was a substantial likelihood that the prosecutor's misconduct prejudiced the defendant by affecting the jury's verdict. *Emery*, 174 Wn.2d at 760. If the defendant did not object at trial, he "is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. When reviewing a claim that

18

prosecutorial misconduct requires reversal, we review the statements in the context of the entire case. *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011).

B.      Appealing to Jury's Sympathy

Tarrer claims that two of the prosecutor's arguments improperly influenced the jury. The first is when the prosecutor quoted Benjamin Cardozo and told the jury to balance Tarrer's rights with the accusers' rights. The next is when the prosecutor stated, "'It goes without saying . . . that 23 years is a very long time to wait for some final justice to come in this case.'" Br. of Appellant at 41 (quoting RP at 1271). Tarrer argues that the prosecutor's remarks diminished the jury's role, lowered the burden of proof, and suggested to the jury that it should convict on improper grounds. Tarrer did not object at trial.

The prosecutor misstated the law in both instances. The role of the jury is not to balance the rights of the accused and the accuser, rather, the "jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt." *Emery*, 174 Wn.2d at 760. And both of the prosecutor's remarks improperly appeal to the jury's sympathy. *See State v. Pierce*, 169 Wn. App. 533, 555, 280 P.3d 1158 (2012). Reference to the amount of time between the crimes and "final justice" served no purpose other than to appeal to the jury's sympathy. It was not relevant to Tarrer's guilt.

Even though the prosecutor's remarks were improper, Tarrer cannot show that the remarks were so flagrant and ill-intentioned that a curative instruction would be ineffective. Here, the prosecutor correctly argued the State's burden of proof. If the defense had objected to the two comments, curative instructions could have cured any prejudice.

C.    Reasonable Doubt Standard

Tarrer next argues that the prosecutor committed misconduct when he discussed the reasonable doubt standard and stated that the law did not let the jury consider a lack of evidence, i.e. that it did not have DNA evidence, shoe prints, or the gun and the ballistics.  Essentially, Tarrer claims the prosecutor suggested that the jury could not consider a lack of evidence in its deliberations.  Tarrer did not object to the argument.  After making this argument, the prosecutor shortly thereafter correctly told the jury that a reasonable doubt may arise from a lack of evidence.

The prosecutor erred in suggesting to the jury that it could not look at the lack of evidence.  However, this error was not so flagrant and ill-intentioned that a curative instruction would not have cured any resulting prejudice.

D.    Disparaging the Defense

Tarrer next argues that the prosecutor committed misconduct by disparaging the defense when he argued that "'[Dr.] Loftus's entire testimony was designed to make you think that it's impossible for any eyewitness to ever accurately identify . . . somebody who committed a crime against them.'"  Br. of Appellant at 40-41 (quoting RP at 1272).  On appeal, Tarrer argues that the prosecutor "implied that the defense used trickery, distraction, and confusion."  Br. of Appellant at 41.  Tarrer objected below, arguing that the prosecutor mischaracterized the evidence, and the trial court overruled his objection.

It is misconduct for the prosecutor to impugn the role or integrity of defense counsel.  *State v. Lindsay*, 180 Wn.2d 423, 431-32, 326 P.3d 125 (2014).  For example, a prosecutor commits misconduct by referring to the defense's case as "bogus" or "involving 'sleight of hand'" because such language implies "wrongful deception or even dishonesty in the context of a court proceeding."  *Thorgerson*, 172 Wn.2d at 451-52.  But here, the prosecutor's remarks were directed

at the weight of Loftus's testimony. The prosecutor was merely drawing a permissible inference from the evidence about the credibility of a witness, not disparaging the defense.

E. Cumulative Misconduct

Finally, Tarrer argues that these alleged instances of prosecutorial misconduct were so pervasive that they affected the outcome of the trial and could not have been cured with proper instruction. We disagree.

Although "'the cumulative effect of repetitive prejudicial prosecutorial misconduct may be so flagrant that no instruction or series of instructions can erase their combined prejudicial effect,'" such is not the case here. *Lindsay*, 180 Wn.2d at 443 (internal quotation marks omitted) (quoting *Glasmann*, 175 Wn.2d at 707). Here, the only two instances of improper argument that Tarrer establishes are the prosecutor's appeals to the jury's sympathy. Each argument was distinct and each could have been easily cured by proper instruction to the jury. Additionally, they were two relatively minor comments in the context of the State's argument as a whole. We hold that the two errors do not amount to such pervasive error that they could not have been cured by proper instruction.

VI. INEFFECTIVE ASSISTANCE OF COUNSEL

A. Standard of Review

"Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact, which we review de novo." *State v. McLean*, 178 Wn. App. 236, 246, 313 P.3d 1181 (2013); *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To prove ineffective assistance of counsel, Tarrer must show that (1) counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that (2) the deficient performance prejudiced him. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).  Failure to establish either prong is fatal to an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 700.  There is a strong presumption that defense counsel's performance was not deficient.  *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).  To establish prejudice, Tarrer must show that the deficient performance prejudiced his case.  *See Fleming*, 142 Wn.2d at 865.

B.      Expert Witness Deadline

Tarrer first argues that his counsel was ineffective for failing to timely disclose Dr. Kiesel as an expert witness.  Defense counsel has a duty "to bear such skill and knowledge as will render the trial a reliable adversarial testing process."  *Strickland*, 466 U.S. at 688.  Failing to disclose an expert witness by the discovery deadline falls below an objective standard of reasonableness.  Therefore, Tarrer's counsel's performance was deficient.  However, Tarrer cannot demonstrate prejudice.  As discussed above, the trial court properly excluded Dr. Kiesel's testimony for several reasons, including lack of foundation and that the proposed testimony appeared to be an attempt to circumvent our previous ruling about the underlying medical records.  Tarrer cannot show that the deficient performance affected his case because he cannot demonstrate that the trial court would have admitted Dr. Kiesel's testimony but for the missed discovery deadline.  Because no prejudice exists, his ineffective assistance of counsel claim fails.  *See Strickland*, 466 U.S. at 700.

C.      Failure to Object to Prosecutor's Closing Argument

Tarrer next argues that his counsel was ineffective for failing to object to the prosecutor's improper closing argument.  Even if his counsel's performance was deficient, Tarrer again fails to demonstrate prejudice.  As discussed above, though some of the prosecutor's comments were

improper, the errors do not amount to such pervasive error that they could not have been cured by proper instruction. Tarrer's ineffective assistance of counsel claim fails because there was no prejudice. *See Strickland*, 466 U.S. at 700.

VII.     REASONABLE DOUBT MANDATORY JURY INSTRUCTION

In a supplemental assignment of error, Tarrer argues that the "reasonable doubt" jury instruction was constitutionally deficient because it required the jury to articulate a reason for having a reasonable doubt. But, Tarrer concedes that the trial court followed our Supreme Court when it used WPIC 4.01, 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 85 (3d ed. 2008), to instruct the jury. The Supreme Court recently reaffirmed that WPIC 4.01 is "the correct legal instruction on reasonable doubt." *State v. Kalebaugh*, 183 Wn.2d 578, 585-86, 355 P.3d 253 (2015). The trial court did not err.

VIII.     CUMULATIVE EFFECT OF ERROR

The defendant bears the burden of proving an accumulation of error of sufficient magnitude that retrial is necessary. *In re Pers. Restraint of Lord*, 123 Wn.2d 296, 332, 868 P.2d 835, *cert. denied*, 513 U.S. 849 (1994). Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). The doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Where no prejudicial error is shown to have occurred, cumulative error cannot be said to have deprived the defendant of a fair trial. *State v. Stevens*, 58 Wn. App. 478, 498, 794 P.2d 38 (1990). If any error occurred in the trial, it was harmless; therefore, there was no cumulative error.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Johanson, C.J.