# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75047-0-I |
| Respondent, | ) ) | |
| | ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CORY JAMES BROOKS, | ) ) | |
| Appellant. | ) ) | FILED: October 2, 2017 |

TRICKEY, A.C.J. — Cory Brooks appeals his conviction of first degree burglary. He argues that the trial court abused its discretion when it allowed a police detective to offer his opinion as an expert, and that the evidence at trial was insufficient to prove that he participated in the burglary. The trial court did not abuse its discretion when it allowed the detective to offer his opinion based on his experience. A rational trier of fact could have found that Brooks participated in the burglary beyond a reasonable doubt when viewing the evidence at trial in the light most favorable to the State. Therefore, we affirm.

## FACTS

Alan Bain lives in Everett, Washington. On July 29, 2014, Bain left his home to go grocery shopping. No one else was in the home when he left.

When Bain returned home, he noticed an old and beat up Hyundai car in his neighbor's driveway that appeared out of place. When he opened his garage door, he heard the inside door between his home and garage open and close. Bain realized that someone was inside, walked outside of the garage, and reached for his cell phone to call the police. Bain saw two young white males come around

the side of his home and move toward the Hyundai. They were carrying pillow cases taken from Bain's home that were filled with his possessions.

Bain ran to the Hyundai and grabbed the steering wheel through the driver's open window. He told the two males that he was going to call the police. The driver put the Hyundai in reverse and tried to detach Bain by hitting trees and bushes. The passenger leaned over the driver and repeatedly hit Bain in the left eye, which had recently undergone a cornea transplant. After being dragged over 200 feet, Bain jerked the steering wheel of the Hyundai, causing it to go over a tree stump and stop. He was thrown from the Hyundai. The men exited the Hyundai and fled. Bain called the police.

The police examined Bain's home, which had been ransacked. The police found an open rear window that appeared to be the entry point for the burglars. They also noted that the back sliding glass door appeared to have been damaged by a crowbar. Items had been stacked near the door, including a laptop computer with a layer of dust on top. Bain said that the laptop had been moved to that location. Detective Colin Ainsworth examined the laptop and saw the outline of a fingerprint without any ridge detail.

The police impounded the Hyundai as evidence, which was registered to Brook Downs. Inside the car, the police found items taken from Bain's home and a receipt from a nearby Home Depot store. The receipt included a crowbar, latex gloves, and a flashlight. The police found a crowbar inside the Hyundai with a white substance consistent with the sliding door of Bain's home, an open box of latex gloves, and a flashlight still in its bubble wrap. The police obtained a copy of

2

the security video from the Home Depot, which showed Downs and another male purchasing the items found in the car.

The police found two pairs of used latex gloves in the car. They sent the gloves to the laboratory for DNA (deoxyribonucleic acid) analysis. Forensic scientist Elizabeth Uhrich obtained a DNA profile from each pair of gloves. One DNA profile matched Downs, the owner of the car. The DNA profile on the other pair matched Brooks. The DNA was located on the outside of the gloves when they were examined by Uhrich, but she could not say whether they had been turned inside out at any point. The likelihood of a random person in the United States matching the DNA profile was one in 1.16 sextillion.

The police interviewed Brooks. Brooks admitted to knowing Downs and said that his DNA was on the latex gloves because he might have been doing work on the Hyundai with Downs. The police showed a photomontage to Bain and two witnesses, but none could identify Brooks.

Brooks was charged with one count of first degree burglary. Downs pleaded guilty to first degree burglary for his role in the incident.

Prior to trial, Brooks moved to preclude Detective Ainsworth from giving his opinion of whether the marks left on the laptop computer were made with a gloved hand under ER 701. The trial court reserved its ruling on the objection.

At trial, Detective Ainsworth testified that a print left by a gloved hand was distinctive because it did not have any ridge detail and would instead leave a "flat spot" in the shape of a hand.[1] The State asked Detective Ainsworth whether,

---

[1] 3 Report of Proceedings (RP) (Feb. 17, 2016) at 222.

based on his training and experience, the marks on Bain's laptop were left by someone wearing gloves. Brooks objected, arguing that Detective Ainsworth was not qualified under ER 702 to offer his opinion on whether the marks were left by a gloved hand. The trial court overruled Brooks's objection and allowed Detective Ainsworth to testify that, in his opinion, the person who left the marks on the laptop was wearing gloves.

Bain testified that Brooks had the same physical characteristics as one of the burglars, but could not identify him in court. Downs testified for the State, and stated that he was friends with Brooks. But Downs testified that he could not remember who had accompanied him to the Home Depot or during the burglary because he had been in a drug induced psychosis. The jury found Brooks guilty of first degree burglary.

Brooks appeals.

## ANALYSIS

### Admission of Expert Testimony

Brooks argues that the trial court abused its discretion when it allowed Detective Ainsworth to testify as to his opinion that the marks on the laptop in Bain's home were left by someone wearing gloves. Specifically, Brooks argues that Detective Ainsworth was not an "expert" under ER 702 and that his testimony was not helpful to the jury.[2] Because Detective Ainsworth was qualified to offer his opinion based on his practical experience and his testimony was helpful to the jury, we disagree.

---

[2] Appellant's Opening Br. at 15-16.

The admissibility of expert testimony depends on whether "'(1) the witness qualifies as an expert [based on their knowledge, skill, experience, training, or education], (2) the opinion is based upon an explanatory theory generally accepted in the scientific community, and (3) the expert testimony will be helpful to the trier of fact.'" State v. Willis, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004) (internal quotation marks omitted) (quoting State v. Swan, 114 Wn.2d 613, 655, 790 P.2d 610 (1990)); ER 702.

"Practical experience is sufficient to qualify a witness as an expert." State v. Ortiz, 119 Wn.2d 294, 310, 831 P.2d 1060 (1992). "Expert testimony is helpful to the jury if it concerns matters beyond the common knowledge of the average layperson and is not misleading." State v. Groth, 163 Wn. App. 548, 564, 261 P.3d 183 (2011). "Courts [will] generally 'interpret possible helpfulness to the trier of fact broadly and will favor admissibility in doubtful cases.'" Moore v. Hagge, 158 Wn. App. 137, 155, 241 P.3d 787 (2010) (internal quotation marks omitted) (quoting Miller v. Likins, 109 Wn. App. 140, 147, 34 P.3d 835 (2001)).

"The decision to admit evidence lies within the sound discretion of the trial court and should not be overturned absent a manifest abuse of discretion." State v. Neal, 144 Wn.2d 600, 609, 30 P.3d 1255 (2001). A trial court abuses its discretion when its decision is "manifestly unreasonable or based upon untenable grounds or reasons." State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997).

Here, Detective Ainsworth had been trained on the "identification and lifting of fingerprints," and had worked with identifying and lifting fingerprints during his

16-year career.[3] Although he had not been specifically trained to check for gloved prints, he testified that he had seen impressions made by gloves and described the unique impressions made by gloved fingers. Because Detective Ainsworth had ample practical experience on which to base his opinion at trial, he was qualified to testify as an expert under ER 702.

In addition, Detective Ainsworth's testimony was helpful to the jury. Detective Ainsworth testified about the differences between a normal fingerprint and a gloved fingerprint on a dusty surface, such as the lack of ridge detail, smears, or other identifying marks. He went on to describe that a gloved hand would leave "marbling" or a "flat spot" without any ridge detail, which would not be helpful in determining the identity of the person leaving the mark.[4]

The type of distinctive mark left by a gloved hand on a dusty surface is not within the common experience of a lay juror. It is unlikely that lay jurors are familiar with the types of impressions that a gloved hand would leave, as compared to fingerprints that are smeared or unidentifiable for other reasons. In light of the broad and favorable interpretation we give to helpfulness to the trier of fact, we conclude that Detective Ainsworth's testimony regarding gloved fingerprints was helpful to the jury.

Because Detective Ainsworth's testimony was both within his area of expertise and helpful to the trier of fact, we conclude that the trial court did not abuse its discretion when it allowed Detective Ainsworth to offer his opinion that the marks on the laptop were left by a person wearing gloves. We do not reach

---

[3] 3 RP (Feb. 17, 2017) at 220.
[4] 3 RP (Feb. 17, 2017) at 222.

the parties' arguments regarding whether the trial court's admission of the testimony was harmless error.

Brooks argues that Detective Ainsworth's lack of special training meant he was not qualified to testify about whether the burglars were wearing gloves and that his testimony was not helpful to the jury, analogizing to State v. Farr-Lenzini, 93 Wn. App. 453, 970 P.2d 313 (1999). In Farr-Lenzini, the Court of Appeals held that the trial court abused its discretion when it allowed a trooper to testify as an expert regarding the defendant's state of mind in a trial for attempting to elude, because the testimony was beyond his area of expertise and experience and was not helpful to the jury. 93 Wn. App. at 461-62.

The present case is distinguishable. Detective Ainsworth was specifically trained to identify and lift crime scene fingerprints and had experience in identifying prints left by gloved hands. Further, testimony regarding the technical analysis of crime scene fingerprints is not within the knowledge of lay jurors, and thus was helpful to the jury. We reject Brooks's argument.

### Sufficiency of the Evidence

Brooks argues that there was insufficient evidence at trial to support his conviction of first degree burglary. Specifically, Brooks argues that the evidence failed to establish that he was one of the people who participated in the burglary of Bain's home. Because a rational juror could have found that Brooks participated in the burglary when viewing the evidence at trial in the light most favorable to the State, we disagree.

Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980). A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "In determining the sufficiency of the evidence, circumstantial evidence is not to be considered any less reliable than direct evidence." State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The State's evidence at trial established that Downs and a male resembling Brooks purchased a box of latex gloves, a crowbar, and a flashlight from Home Depot shortly before the burglary took place. These items, in addition to two pairs of used gloves, were found in the Hyundai used by the burglars. One pair of the gloves contained DNA matching Brooks. Detective Ainsworth's testimony at trial established that the burglars had worn latex gloves while handling items in Bain's home.

From this evidence, it is reasonable to infer that Brooks was the second burglar. There was a short span of time between when the males in the security video purchased latex gloves from the Home Depot and when those latex gloves were used during the burglary. A male matching the physical characteristics of Brooks was with Downs at the Home Depot, and his DNA was found on one of the used pairs of gloves in the Hyundai. It is reasonable to infer from this evidence that Brooks was the person accompanying Downs at the Home Depot and that he

8

subsequently used the latex gloves during the commission of the burglary. Therefore, taking the State's evidence and all reasonable inferences therefrom as true, a rational trier of fact could have found that Brooks participated in the burglary of Bain's home.

Affirmed.

_Trickey, ACJ_

WE CONCUR:

_Mann, J_

_Spearman, J_